In re Mark Emmett PAYNE d/b/a
Mark's Skelly Service, Winifred
Arlene Payne, Debtors.

In re Burrell Raymond BROWN a/k/a
Burrel R. Brown d/b/a Better Roofing
and Siding Co., Debtor.

Fletcher BELL, in his capacity as Commissioner of Insurance of the State of Kansas and Administrator of the Kansas Workmen's Compensation Fund, Plaintiff,

v.

Burrel R. BROWN d/b/a Better Roofing
and Siding Co., Defendant.

Fred D. (IO) Watts Opal Wadine
Watts a/k/a Shorty
Watts, Debtors.

Fletcher BELL, in his capacity as Commissioner of Insurance of the State of Kansas and Administrator of the Kansas Workmen's Compensation Fund, Plaintiff,

v.

Fred D. (IO) WATTS Opal Wadine
Watts a/k/a Shorty Watts,
Defendants.

Bankruptcy Nos. 81–40899, 82–10168
and 82–10485.
Adv. Nos. 82–0210, 82–0534.

United States Bankruptcy Court,
D. Kansas.

Feb. 23, 1983.

F. Stannard Lentz of Hamill, Lentz, Neill & Dwyer, Mission, Kan., for Ins. Com'r.

Eric K. Johnson of Schroeder, Heeney, Groff & Hiebert, P.A., Topeka, Kan., for the Paynes.

Lloyd C. Swartz, Topeka, Kan., trustee.

Steven J. Rupp of Curfman, Harris, Stallings, Grace & Snow, Wichita, Kan., for Burrel Brown.

Christopher J. Redmond of Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., trustee.

Leonard F. Watkins, Jr., Wichita, Kan., for Fred and Opal Watts.

Mark A. Dickerson, Wichita, Kan., trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In these three cases, consolidated for decision because of common issues of law pursuant to F.R.Civ.P. 42(a) and Bankr.Rl. 742, the Court must determine whether obligations and contingent obligations owed to the Kansas Insurance Commissioner are priority taxes in bankruptcy. The Paynes have filed a chapter 13 proceeding. Burrel Brown has filed a chapter 7 petition in bankruptcy. The Watts have also filed a chapter 7 petition.

The issues presented for determination are:

Is an insolvent employer's obligation to the Kansas Insurance Commission arising under the Kansas Worker's Compensation Act and K.S.A. § 44–532a an excise tax within the meaning of 11 U.S.C. § 507(a)(6)(E). If so, is it excepted from discharge in chapter 7 under § 523(a)(1) or required to be fully paid in a chapter 13 proceeding under § 1322(a)(2).

The parties have submitted the issues on briefs and the Court is now prepared to rule.

### FINDINGS OF FACT

#### In Re Payne

James L. Hickey was injured while in the employment of the debtor Mark Emmett Payne, d/b/a Mark's Skelly Service. The injury was within the scope of the Kansas Worker's Compensation Act. Payne failed to make the payments required of him as an employer under the Worker's Compensation scheme. Payne was financially unable to pay compensation to Hickey and the Kansas Worker's Compensation Fund determined Hickey was entitled to $24,797.90, pursuant to K.S.A. § 44–532a. Final payment from the Fund to Hickey was made in June, 1981.

The debtors apparently filed suit in state court against their Worker's Compensation insurance carrier alleging failure to notify them of the cancellation of their Worker's Compensation insurance policy. The Kansas Commissioner of Insurance was joined in the action. Judgment in that case, however, has not been rendered.

The debtors filed their chapter 13 plan, listed the claim of the insurance commissioner as unliquidated, contingent and unsecured, and proposed that it be paid 0%.

#### In Re Brown

The plaintiff, Kansas Commissioner of Insurance, filed an action against the debtor in state court prior to the commencement of this bankruptcy proceeding. In that suit, the insurance commissioner alleged:

1. Plaintiff is the Commissioner of Insurance of the State of Kansas, and pur-

suant to Statute, the administrator of the Workmen's Compensation Fund; defendant is an individual doing business at all times mentioned herein as Better Roofing & Siding Co., and may be served with process at 1608 South Edwards, Wichita, Kansas.

2. On or about May 6, 1980, James B. Taylor, while working within the course and scope of his employment with defendant, suffered personal injury by accident.

3. On or about May 6, 1980, and at all material times, defendant was operating under and pursuant to the terms and conditions of the Kansas Workmen's Compensation Act, but nevertheless, defendant failed to secure payment of worker's compensation to James B. Taylor, in violation of K.S.A. 44–532, and further, defendant was adjudged financially unable to pay compensation to James B. Taylor to which said injured worker was entitled as required by the Kansas Workers' Compensation Act.

4. As a result of and by reason of the foregoing, plaintiff was required, pursuant to the provisions of K.S.A. 44–532(a), to pay to the injured workman, James B. Taylor, compensation benefits, including medical benefits, in the sum of $45,195.75.

5. Plaintiff is entitled, pursuant to K.S.A. 44–532(a) to recover from defendant the before mentioned payments.

WHEREFORE, plaintiff prays for judgment against defendant in the sum of $45,195.75, plus interest, attorney fees, court costs, and for such other and further relief as the Court may deem just, equitable and proper.

Defendant Brown, in his chapter 7 bankruptcy petition, listed the claim of the insurance commissioner as a "potential claim," and he seeks to discharge the obligation in this bankruptcy proceeding.

The insurance commissioner filed a complaint to determine the dischargeability of Brown's obligation. He has asked the Court to enter an order ruling that the claim created by K.S.A. § 44–532a is excepted from discharge.

The debtor filed a motion for declaratory judgment and a motion to dismiss the plaintiff's action.

### In Re Watts

Jimmy R. Chancey suffered an injury on or about May 15, 1981, while in the employ of the defendant, Fred Watts d/b/a Farm Center Maize Mills, Inc. Mr. Chancey subsequently instituted proceedings against the defendant before the Division of Workers' Compensation for the State of Kansas. Plaintiff received a Notice to Implead the Kansas Workers Compensation Fund (hereinafter referred to as the Fund) in that proceeding. A copy of the Notice is attached hereto as Exhibit A. One of the alleged grounds for impleading the Fund was the insolvency of the defendant employer. Pursuant to K.S.A. § 44–556(a), Bryce B. Moore, the Workers' Compensation Director, made the Fund a party to the proceeding (See attached Exhibit B). The action before the Division of Workers' Compensation is presently pending.

April 9, 1982 the debtors filed their bankruptcy petition, listing the plaintiff as a creditor. The plaintiff filed a proof of claim July 19, 1982, for an estimated amount of $100,000.00, the Fund's maximum liability in the Workers' Compensation proceeding. Subsequently, plaintiff instituted this action, seeking a non-dischargeability determination with respect to any amount it may be liable for in the Workers' Compensation action, due to the insolvency of the defendant, Fred Watts.

The liability of Mr. Watts is being contested and has not been established to date.

### General Facts

At a hearing held at the Court's request, William Sneed, chief attorney for the Kansas Insurance Department, and the attorney in charge of the Worker's Compensation Fund, gave the following testimony:

There are no rules or regulations for administering the Kansas Worker's Compensation Fund. The commission has never levied on the exempt property of an insolvent employer against whom judgment was

812

taken. When judgments are taken, or when it comes to the attention of the insurance commissioner that employers are not complying with the provision of the Worker's Compensation Act, the commission does not file tax liens against the employer's property.

## CONCLUSIONS OF LAW

### 1. *Kansas Workers' Compensation Act.*

In Kansas, employers covered by the Workers' Compensation Act (WCA) are liable to pay compensation to employees injured in the course of employment. K.S.A. § 44–501 (1981). The employer is required to secure payment of compensation by carrying insurance. Generally the employer can have worker's compensation insurance issued by an authorized insurance carrier, K.S.A. § 44–532(b)(1) (1981), or by becoming an approved self-insurer upon proof of financial ability. K.S.A. § 44–532(b)(2) (1981). The failure of an employer to be properly insured is a class C misdemeanor. K.S.A. § 44–532(c) (1981). In order to protect the injured employee, if an employer does not carry insurance and cannot compensate the injured employee,

> ... the injured worker may apply to the director for an award of the compensation benefits ... to be paid from the workers' compensation fund.

K.S.A. § 44–532a(a), as amended in chapter 213 § 2 [1982] Kan.Sess.Laws 967. If the injured employee is compensated from the Workers' Compensation Fund (the Fund),

> [t]he commissioner of insurance, acting in his capacity as administrator of the workers' compensation fund, shall have a cause of action against the employer for recovery of any amounts paid from the workers' compensation fund....

K.S.A. § 44–532a(b) as amended in Ch. 213 § 2 [1982] Kan.Sess.Laws 967.

The insolvent employer portion of the Fund receives its revenues from two sources. First, the Fund receives the bulk of its money from assessments made against all insurance carriers and qualified self insurers, designed to cover all claims against the Fund arising because an employer was not insured, and was not a qualified self-insured employer. Ch. 213, § 6 [1982] Kan.Sess.Laws 972, amending K.S.A. § 44–566a(b) (1981). Second, the Fund receives money from judgments collected against uninsured, insolvent employers under K.S.A. § 44–532a(b). Very little money, however, is actually recovered. Employers contribute to the Fund indirectly by carrying the required insurance, and paying premiums to the insurance company. The right to recover from an insured is not characterized as a tax, but rather as a cause of action. By having a workers' compensation act, the employee is provided and benefits from "a remedy which is both expeditious and independent of proof of fault...," and the employer is provided and benefits from "a liability which is limited and determinate." 81 AmJr.2d Workmen's Compensation § 2, at 701 (1976). See *Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947); 78 J. Appleman, Insurance Law and Practice § 4591, at 59–64 (1979). See also, *Acock v. Kansas City Power & Light Co.,* 135 Kan. 389, 394, 10 P.2d 877 (1932). Society also benefits because it is relieved "of the burden of supporting those injured or the dependents of those killed in industry." *Green v. Burch,* 164 Kan. 348, 356, 189 P.2d 892 (1948). If an employer is insolvent and uninsured, the state pays the worker's compensation benefits to the employee out of the Fund and then sues the employer to recover the amount actually paid out of the Fund, plus costs. Thus, there are really two obligations. First, the employer is obligated to carry insurance or qualify as a self-insured. Second, the insolvent, uninsured employer is required to reimburse the state for funds paid out on the employer's behalf.

### 2. *Computation of Assessments Under the WCA.*

Assessments under the WCA are made against insurance companies and qualified self-insured employers. They are computed based on a ratio formula. The ratio of the assessment against the employer to the to-

tal amount of money needed in the fund (based on the previous fiscal year) must equal the ratio of the benefits paid on behalf of a specific employer in the previous calendar year to the total benefits paid by the insurance company in the previous fiscal year. K.S.A. § 44–566a(b). The mathematical formula, (with x being the assessment against an insurance company) is:

$$\frac{x}{\text{total Fund (based on previous fiscal year)}} = \frac{\text{benefits paid by this insurance company on behalf of a specific employer in previous calendar year}}{\text{all benefits paid by insurance companies and self insureds in previous calendar year}}$$

At the hearing the following hypothetical was presented to illustrate the formula. Assume it is determined that $2,980,000 of claims will be made against the fund in fiscal year 1983 based on the claims made in 1982. Further assume all insurance companys paid out $90,000,000 in claims in the previous calendar year, and the xyz insurance company paid out $10,000 in claims on behalf of a specific employer. The assessment (x) against the xyz insurance company on behalf of this specific employer would be:

$$\frac{x}{\$2,980,000} = \frac{\$10,000}{\$90,000,000}$$

$$x = \$331\,[1]$$

If this specific employer complied in full with the law by procuring insurance, a portion of his insurance premiums would be the assessment paid by his insurance company and passed on to him by his insurance company. If an insolvent employer is not qualified as a self-insurer, does not procure insurance and has an injured employee, a claim against the Fund will be made, the total amount of money the Fund will have to pay out could increase, and in years after the claim, assessments will rise based on the formula. The insolvent uninsured employer, however, is never assessed under this

formula and is actually a non-participant in the scheme of assessment funding.

3. *Taxes and Excise Taxes Under the Bankruptcy Code.*

■ Taxes are:

those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.

*City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). Accord, *United States v. State of New York,* 315 U.S. 510, 515–16, 62 S.Ct. 712, 714–15, 86 L.Ed. 998 (1942). In bankruptcy, the issue of whether an obligation is a tax is a federal question, and it does not matter how the state denominates the obligation. *City of New York v. Feiring,* supra, at 285, 61 S.Ct. at 1029.

■ An excise tax is:

... practically any tax which is not an *ad valorem* tax ..., imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege ....

*Callaway v. Overland Park,* 211 Kan. 646, 651, 508 P.2d 902 (1973). See also 84 CJS Taxation § 121, at 245 (1954).

■ Further definitions of taxes and excise taxes abound, but although the definitions are easily stated, their application to a given obligation can be elusive. The Ninth Circuit Court of Appeals, however, has set forth a list of the elements of a tax which the Court believes is helpful. A tax is:

(a) an involuntary pecuniary burden, regardless of name;

(b) imposed by or under the authority of the legislature;

(c) for public purposes;

(d) under the police or taxing power of the state.

*In Re Lorber Indus. of Calif., Inc.,* 675 F.2d 1062, 1066 (9th Cir.1982).

---

1. At the hearing, the formula was explained as:

$$\frac{x}{10,000} = \frac{2,980,000}{90,000,000}.$$

Mathematically, this is the same as the formula used in this opinion and the formula used in K.S.A. § 44–566a(b).

Both the obligation to carry insurance and the obligation to reimburse the Fund are involuntary pecuniary burdens, because both are non-contractual obligations imposed by state statute without the debtor's agreement or consent. Id. at 1066. Both are imposed under the State's police power, because the WCA and all its component parts are designed to benefit the health, welfare and safety of employees, employers and society. See 81 Am.Jur.2d Workers Compensation § 11 (1976). Both obligations are for public purposes, because both attempt to shift the burden of compensation for an employee's injury or death for society and individual employers to the industry. *Yocum v. Phillips Petrol. Co.,* 228 Kan. 216, 219, 612 P.2d 649 (1980). The obligations tend to defray the expenses of undertakings authorized by government for if insurance is procured as required, claims against the Fund decrease under the formula discussed in part II and assessments will drop, although changes in assessments always lag behind the year in which claims against the Fund are made.

Finally, the obligations are imposed on the performance of an act—an employer is required to procure insurance because he performs the act of employing. An uninsured, insolvent, non-qualified employer must reimburse the Fund because he performs the act of failing to be insured.

Based on this analysis, it would appear the WCA indirect assessments and reimbursements provisions have attributes of an excise tax, though admittedly, the definition of a tax is broad and has the potential of including any and all sovereign undertakings.

4. *Other Attributes of the WCA.*

Generally, taxes in Kansas can be collected from any property of the debtor, including exempt property. See, e.g., K.S.A. § 79–1804 (1977), K.S.A. § 60–2301 (Supp. 1981); K.S.A. § 60–2306 (1976); K.S.A. § 79–2101 (Supp.1981). Although the insurance commission has never attempted to collect a judgment against uninsured, insolvent, non-qualified employers from the em-

ployer's exempt property, nothing in the WCA would seem to prevent it.

K.S.A. § 44–512a provides:

(a) In the event any compensation, including medical compensation, which has been awarded under the workmen's compensation act, is not paid when due to the persons, firm or corporation entitled thereto, *the workman shall be entitled* to a civil penalty . . . and assessed against the employer or insurance carrier liable for such compensation, . . .

(b) After the service of . . . written demand, if the payment of disability compensation or medical compensation set forth in the written demand is not made within twenty (20) days from the date of service for such written demand, plus any civil penalty, as provided in subsection (a) of this section, if such compensation was in fact past due, then all past due compensation and any such penalties shall become immediately due and payable. The *workman may maintain an action* in the district court which would have jurisdiction over an appeal of an award of compensation to the claimant, for the collection of such past due disability compensation and medical compensation, any civil penalties due under this section, and the reasonable attorneys' fees incurred in connection with the action.

(c) The remedies of execution, attachment, garnishment or any other remedy or procedure for the collection of a debt now provided by the laws of this state shall apply to such action and also to all judgments entered under the provisions of K.S.A. § 44–529: Provided, No exemption granted by any law shall apply except the homestead exemption granted and guaranteed by the constitution of this state.

(emphasis added). K.S.A. § 44–512a. If compensation due an employee is not paid, a civil penalty is assessed against an obligor, and if compensation is not paid within 20 days of demand, the employee may maintain an action in state district court. Collection of the judgment debt stemming from *this* action is subject to constitutional

exemption provisions. Furthermore, collection of the judgment debt stemming from an award made by the insurance commissioner under K.S.A. § 44–529 (1981) is also subject to constitutional exemption provisions. Nothing in the WCA or Kansas case law states or implies that collection of judgment debts stemming from an action brought by the insurance commissioner against the uninsured employer under K.S.A. § 44–532a(b) is subject to the Kansas constitutional exemption provisions.

Very often an automatic lien arises against a debtor's property if Kansas taxes are not paid. See, e.g., K.S.A. § 44–717(e) (1981) (lien against employer for failure to pay state unemployment insurance contribution); K.S.A. § 79–1804 (1977) (lien on realty for failure to pay property tax). The WCA does not provide an automatic lien on an employer's property if insurance is not procured, nor if reimbursement to the Fund is required. In this sense, it would appear obligations under the WCA are not taxes.

Finally, neither the requirement to procure insurance nor the reimbursement obligation to the Fund is called a tax in the WCA. This, however, carries little if any weight under *City of New York v. Feiring,* 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941).

5. *Case law.*

Courts have held that under a workers compensation scheme in which employers are directly assessed by the state (as opposed to a requirement that insurance be procured), the direct assessment is a tax. See, e.g., *In Re Pan American Paper Mills, Inc.,* 618 F.2d 159 (1st Cir.1980); *In Re International Automated Mach., Inc.,* 9 B.R. 575 (N.D.Ohio, 1981); *State Indus. Accident Comm'n. v. Aebi,* 177 Or. 361, 162 P.2d 513 (1945). Several earlier cases, however, held that direct assessments were not taxes. See, e.g., *In Re Farrell,* 211 F. 212 (W.D. Wash.1914); *In Re Eureka Paper Co.,* 44 Am.Bankr.Rep. 179 (N.D.N.Y.1919); *In Re Rockaway Soda Water Mfg. Co.,* 36 Am. Bankr.Rep. 640 (E.D.N.Y.1916). These cases held that WCA assessments were not for public purposes, but rather were assess-

ments against a class for the benefit of a class, a rationale that has been criticized and rejected. See *In Re Pan American Paper Mills, Inc.,* supra at 162, n. 3; *Ernst v. Hingeley,* 11 Wash.2d 171, 118 P.2d 795, 47 Am.Bankr.Rep. (new series) 255 (1941); *C.S. Barlow & Sons v. H & B Lumber Co.,* 153 Wash. 565, 575, 280 P. 88, 91 (1929); 3A Collier on Bankruptcy ¶ 64.404, at 2167–68, n. 4 (14th Ed. 1975). Based on the more recent case law and the unsteady ground on which the earlier decisions rested, it would appear the prevailing rule is that a *direct assessment* against an employer is an excise tax in bankruptcy.

The Court has found two cases involving indirect contributions to a Fund, and a state's claim for reimbursement. In *In Re Pan American Paper Mills, Inc.,* supra, the Puerto Rico Fund made 2 claims in the chapter XI proceeding. The first claim sought $68,250.61 for direct premium assessments that were not paid by the debtor-employer from 1972–1976. This claim was filed as a priority claim and the court held it was a tax entitled to priority. The second claim sought $50,897.05 for compensation the Puerto Rico Fund paid to the debtor's employees. The Puerto Rico Fund filed this claim as a general unsecured claim, apparently overlooking or not believing this portion was a tax entitled to priority treatment in bankruptcy, and thus the issue of priority was never before or decided by the court.

In *In Re Beaman,* 9 B.R. 539, 7 BCD 384, 4 CBC2d 157 (D.Or.1980), the court held the obligation of an uninsured employer/debtor to reimburse the state of Oregon for payments made through Oregon's Workers' Compensation Fund to employees of the debtor was an excise tax under § 507(a)(6)(E).

The Oregon Workers' Compensation Act is similar to the Kansas WCA. In both states, employers are required to carry insurance. See Or.Rev.Stat. §§ 656.017; 656.407; 656.005(5). When an employer does not secure insurance, the state Fund compensates the employee and the employer becomes obligated to reimburse the Ore-

gon State Accident Insurance Fund Corp., Or.Rev.Stat. § 656.054 (1981), or the Kansas Insurance Commissioner.

There are several differences. Employers in Oregon are required to directly contribute to the state Fund. Or.Rev.Stat. § 656.504 (1981). If the employer defaults in the assessment contributions to the Fund, or if the Fund is required to satisfy a claim on behalf of an uninsured employer (non-complying employer) the Fund is granted a lien after a notice of claim is filed. The lien is prior to all subsequent liens, except, inter alia, tax liens. Or.Rev. Stat. § 656.566(5), and attaches to all of an employer's property. § 656.566(1).

Any amounts paid out by the Fund are statutorily declared to be taxes, Or.Rev. Stat. § 656.562(2), and are statutorily "preferred" to all general claims in bankruptcy. Or.Rev.Stat. § 656.562(1).

In *Beaman* the State Fund was claiming a priority for amounts paid to injured employees of non-complying employers.

The court stated:

[t]he requirement that noncomplying employers reimburse the state for benefits paid to their insured workers promotes a governmental interest which would otherwise be funded by the State Administrative Fund and by all employers who contribute indirectly or directly to the Fund. The debt is a tax on noncomplying or outlaw employers. Neither compliance with the law nor payment of the tax imposed is elective once benefits are paid to an injured worker. .

9 B.R. at 541, 7 BCD at 385, 4 CBC2d at 159. The court further stated the obligation is:

an excise tax because it is not a direct tax imposed upon persons or property. The Oregon tax is a narrow indirect tax imposed upon those who occupy the status of employers who have not obtained insurance required by law and on whose behalf the state has paid a worker's compensation claim . . . ., The punitive and contingent nature of the imposition does not detract from its character as an excise tax.

Id. at 541–42, 7 BCD at 385, 4 CBC2d at 160. The court also said the obligation was a tax because the Oregon statute declared it to be a tax. To the extent the court in *Beaman* based its decision on this ground, this Court cannot agree. The Supreme Court has made it clear that the manner in which the state denominates the obligation is irrelevant. *City of New York v. Feiring*, 313 U.S. supra at 285, 61 S.Ct. at 1029.

The debtors also cite *Wilcox v. Rohr*, 81 Cal.App.2d 312, 183 P.2d 916 (1947) for the proposition that Workers' Compensation judgment debts are dischargeable and therefore could not be nondischargeable priority taxes. In *Wilcox*, the court simply held that such a debt was provable and dischargeable under the Act absent a showing of willful or malicious injury to person or property. The issue of priority under § 64(a)(4) [now § 507(a)(6) ] was never before the California court nor discussed. *Wilcox* is therefore inapposite to the issues before this Court.

6. *Summary.*

It seems apparent that the obligations imposed under the WCA have some characteristics indicating they are taxes, and other characteristics that would indicate they are not taxes.

a. *Tax Characteristics.*

Under a traditional analysis, the judgment obligation under K.S.A. § 44–532a(b) meets the broad and all-embracing definition of a tax (see part 3). It also appears the system of requiring the employer to procure insurance, assessing the insurance company, and then having the assessment passed on to the employer in the form of insurance premiums could be characterized as a system of *indirect taxation* designed to enable the state to deal directly with a few insurance companies, rather than numerous employers. The system helps spread the cost of workers compensation to private industry and enables the state government to get out of the business of being a primary insurer. Moreover, there is nothing in the WCA to prevent the insurance com-

missioner from levying on exempt personal property or homestead realty of the employer to satisfy the judgment obtained under K.S.A. § 44–532a(b).

### b. *Non-tax Characteristics.*

An automatic lien does not rise as in other unquestioned state taxes. Although the commissioner is granted a cause of action under K.S.A. § 44–532a(b), it appears that technically, this cause of action can be viewed as a subrogation action. Under K.S.A. § 44–512a(b), a workman can sue his employer to collect an administrative award of disability and medical compensation, civil penalties and attorney's fees. Practically speaking, an employee will not sue his insolvent employer when there is a solvent state fund from which the award may be obtained. After the employee makes a claim against the Fund and receives an award under K.S.A. § 44–532a(a), the insurance commissioner can then sue the employer under K.S.A. § 44–512a(b). Thus by satisfying the claim of the employee, the insurance commissioner "steps into the shoes" of the employee, and is subrogated to the rights of the employee. As a subrogee, the Commissioner would have to prove the elements of a section under § 523(a), (2), (4), (6) to have its debt excepted from discharge. See *In Re Brower,* 24 B.R. 246 (D.N.M.1982).

Although nothing in the WCA prevents execution on exempt and homestead property, nevertheless the commission has not attempted to execute, indicating the insurance commissioner does not believe the judgment granted under K.S.A. § 44–532a(b) has the exemption piercing tax characteristic.

At least one circuit court has implied that the trend is to give a somewhat less expansive interpretation to what are "taxes" under the priority statutes in bankruptcy. See *In Re Lorber Indus. of Calif., Inc.,* 675 F.2d 1062, 1068 (9th Cir.1982).

Finally, unlike Oregon, in Kansas the instant debtor-employers are not part of the assessment/taxing structure because they are not assessed directly or indirectly under the tax assessment formula.

They are non-participants in assessment-funding.

### 7. *Conclusions.*

 Exceptions to discharge should be liberally construed in favor of the debtor. 3 Collier on Bankruptcy ¶ 523.05A (15th Ed. 1982). Moreover, ambiguities in the Code must be resolved in favor of the debtor, not the creditor. *Wright v. Union Central Life Ins. Co. (Wright II),* 311 U.S. 273, 278–79, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940).

 The Court believes the obligations under the WCA have more substantial non-tax characteristics and are more likened to an assignment of or subrogation to a Tort Claim than a tax. Therefore, the Court holds that each debtor's obligation is not a priority tax under § 507(a)(6).

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.