**In re James E. WALDO, Debtor.**

**James E. WALDO, Plaintiff,**

**v.**

**STATE of Montana DEPARTMENT OF LABOR AND INDUSTRY UNINSURED EMPLOYERS FUND, Defendant.**

**Bankruptcy No. 95–10117–7.
Adv. No. 95/00044.**

United States Bankruptcy Court,
D. Montana.

Sept. 5, 1995.

Phillip R. Oliver, Oliver, Graves, Toennis & Gustafson, P.C., Billings, MT, for plaintiff.

John H. Grant, Jackson Murdo Grant & McFarland, P.C., Helena, MT, for defendant.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this adversary proceeding Plaintiff/Debtor, James E. Waldo ("Debtor"), seeks discharge of a claim by the Defendant/Creditor Montana Department of Labor and Industry Uninsured Employers' Fund ("the UEF"). Debtor avers that the claim

does not fall under § 507(a)(8)(E) [1], that the claim is not for an excise tax or a tax for the purposes of the Bankruptcy Code, and that the claim is therefore dischargeable under § 523(a)(1)(A).[2] Debtor argues in the alternative that, if § 507(a)(8)(E) does apply to the debt, it arose from a transaction occurring more than three years prior to the date of the filing of Debtors' Petition in Bankruptcy, and is therefore dischargeable in bankruptcy under 11 U.S.C. § 507(a)(8)(E)(ii). The UEF disputes this characterization, contending that the transaction giving rise to the debt occurred within three years of the bankruptcy petition when the state court system finally determined Debtor's liability; that workers' compensation premiums are taxes; and that as a penalty related to such taxes, the debt in question falls under the priority and nondischargeability provisions of 11 U.S.C. §§ 507(a)(8)(E) and 523(a)(1)(A). However, both parties err. The Bankruptcy Court finds that the UEF's claim against Debtor is not a premium for workers' compensation insurance, is in the nature of an excise tax, and that the transaction giving rise to the tax occurred within three years of the filing of Debtor's bankruptcy petition. Therefore, judgment on the merits shall be entered in favor of the UEF dismissing the Complaint in its entirety.

Debtor filed a voluntary Chapter 7 petition on January 20, 1995, together with completed Schedules and Statement of Financial Affairs. Debtor's Schedule F (unsecured nonpriority debts totaling $72,575.80) includes the UEF's $50,000 claim listed as "disputed." Plaintiff filed the instant adversary Complaint May 11, 1995. The Trustee filed a no-asset report on May 17, 1995. After due notice, trial of this cause was held on July 11, 1995. Both Plaintiff and Debtor were represented by counsel. Plaintiff filed a trial brief and several exhibits were admitted into evidence. At the close of the hearing, the Court granted the UEF 10 days in which to respond to Plaintiff's trial brief and Plaintiff an additional five days in which to reply. The matter was then taken under advisement. The briefs have since been filed and reviewed by the Court, and the matter is ready for decision.

The questions presenting themselves in the case at bar involve the Montana Workers' Compensation statute. The first issue is whether, for the purposes of the Bankruptcy Code, an uninsured employer's obligation to pay the Montana Uninsured Employer's Fund after the employer's injured employee makes a claim against the fund is in the nature of a tax. If the uninsured employer's obligation is in fact a tax, the second issue under § 507(a)(8)(E)(ii) is when did the "transaction" giving rise to the assessment occur.

## I.

The Montana Workers' Compensation Court determined that on September 28, 1988, Gary Loos died from injuries sustained while employed by Debtor. However, on the date of the injury Debtor had no workers' compensation insurance. Debtor's lack of coverage resulted in a claim by Loos' widow against the UEF pursuant to the uninsured employer provisions of the Montana workers' compensation law. Mont.Code Ann. § 39–71–501, *et seq.* The Montana Supreme Court affirmed this outcome on March 17, 1993. *Loos v. Waldo and Uninsured Employers*

---

1. 11 U.S.C. § 507 provides:
   (a) The following expenses and claims have priority in the following order:
   *   *   *   *   *   *
   (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   *   *   *   *   *   *
   (E) an excise tax on—
   (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or (ii) if a return is not required, a transaction occur-

ring during the three years immediately preceding the date of the filing of the petition;

2. 11 U.S.C. § 523(a)(1)(A) provides:
   (a) A discharge under Section 727, 1141, 1128(a), 1128(b) or 1328(b) of this title does not discharge an individual debtor for any debt—
   (1) for a tax or a custom duty—
   (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

*Fund,* 257 Mont. 266, 849 P.2d 166 (1993). On September 24, 1993, the workers' compensation court entered an order awarding Mrs. Loos $275.08 per week in payments to be made by the UEF. As of June 12, 1995, the payments had totaled $76,954.65.

Under Montana law, an uninsured employer is liable to the UEF, not to exceed $50,000, when the fund disburses benefits claimed by the employer's injured employees. Mont.Code Ann. § 39–71–504(2).[3] The UEF's payment's to Mrs. Loos exceeded $50,000, and therefore the UEF has a claim against Debtor for $50,000.[4] This Court must now determine whether the UEF's claim has priority as a tax and is nondischargeable in bankruptcy.

## II.

■ The Bankruptcy Code excepts from discharge any tax debt entitled to priority under 11 U.S.C. § 507(a)(8)(E). 11 U.S.C. § 523(a)(1)(A). Further, the Ninth Circuit Court of Appeals adopted for the purposes of bankruptcy the following "elements which characterize the exaction of a 'tax'":

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) imposed by, or under authority of the legislature;

(c) for public purposes, including the purposes of defraying expenses of government or undertaking authorized by it;

(d) under the police or taxing power of the state.

*In re Lorber Indust. of Calif., Inc.,* 675 F.2d 1062, 1066 (1982). An "involuntary pecuniary burden" is "a non-contractual obligation imposed by state statute upon taxpayers who [have] not consented to its imposition." *Id.*

(citing with approval *In re Farmers Frozen Food Co.,* 221 F.Supp. 385 (N.D.Cal.1963)). Since UEF's claim against Debtor satisfies the *Lorber* test, the debt is a tax.

In *Lorber,* the court found that a use fee charged by a County Sanitation District for pollutants voluntarily released into local water courses did not satisfy the first element of the court's test, and thus was not a tax. *Lorber,* 675 F.2d at 1067. Since the District assessed charges against the debtor in that case only for debtor's actual use of the waterways, and only in proportion to that use, the court determined that the debtor's decision to release the waste "triggered" its obligation to the district. As an obligation undertaken upon the debtor's own decisions and acts, the debt fell "within the non-tax fee classification defined by the Supreme Court." *Id.* (citing *National Cable Television Ass'n v. United States,* 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974)).

Asserting support for Debtor's cause in *Lorber,* Debtor also claims validation from a recent Ninth Circuit Bankruptcy Appellate Panel ("BAP") decision. *In re Camilli,* 182 B.R. 247 (9th Cir. BAP 1995).[5] In *Camilli,* the BAP applied the *Lorber* test to an Arizona workers' compensation claim seemingly analogous to the one at bar. The debtor owed the Industrial Commission of Arizona's "special fund" ("ICA") reimbursement of benefits paid to the uninsured debtor's injured employee. *Id.* at 248–49. A divided BAP found that under the first element of the *Lorber* test, reimbursement of the fund should be properly characterized as in the nature of a "voluntary" fee. The BAP made this finding notwithstanding the fact that the Arizona statute specifically requires reimbursement by the uninsured employer once an injured employee makes a valid claim

---

**3.** Mont.Code Ann. Section 39–71–504(2) provides:

(2)(a) The fund shall receive from an uninsured employer an amount equal to all benefits paid or to be paid from the fund to an injured employee of the uninsured employer. However, the uninsured employer's liability under this subsection (2)(a) may not exceed $50,000.

(b) The dollar limitation does not apply to an uninsured employer's liability to an injured employee or the employee's beneficiaries under 39–71–509 or 30–71–515.

**4.** It is important to note that the UEF claim at bar does not arise under Mont.Code Ann. Section 39–71–504(1), which could call for a wholly different analysis.

**5.** This decision is currently pending on appeal before the Ninth Circuit. It has been fully briefed and will either be set for oral argument, or be ruled upon within three months.

against ICA. A.R.S. § 23–907 C. Relying on *In re Payne,* 27 B.R. 809 (D.Kansas 1983), the BAP reasoned:

> [U]nder *Lorber,* assessments stemming from a debtor's decision to use specific services provided by the State are dischargeable as fees. Because in Arizona an employer may elect not to use insurance provided by the State, charges assessed by the State are in the nature of fees rather than taxes.

*Camilli,* 182 B.R. at 251. The BAP further explained that by failing to comply with provisions of the Arizona statute requiring employers to secure workers' compensation for their employees, the debtor had entered into an "implied voluntary contract with ICA ... for subrogation of monies paid to [the debtor's] employees." *Id.*

However, the dissent in *Camilli* acutely criticized the BAP's conclusions in a persuasive and tightly reasoned analysis. Noting that the ICA provides benefits under statutory authority for the general public welfare, that no private workers' compensation carriers provided similar benefits, and that the ICA has direct statutory authority to collect payments made to injured employees from their uninsured employers, the dissenter concluded that the debt fit with the Supreme Court's definition of an excise tax as a " 'pecuniary obligation laid upon individuals or their property, regardless of their consent, for purposes of defraying the expenses of government or undertakings authorized by it.' " *Id.* at 252 (citing *New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941)).

The dissent emphasized that bankruptcy courts in the Ninth Circuit have interpreted *Lorber* as requiring tax treatment of workers' compensation reimbursement claims, *Id.* at 254, pointing to both *In re Beaman,* 9 B.R. 539, 542 (Bkrtcy.D.Oregon 1980) (where the Oregon Bankruptcy Court found a scheme requiring reimbursements made to the State Workers' Compensation Department rather than to Oregon's regular workers' compensation fund in the nature of a tax) and to *In re Hutchinson,* 135 B.R. 890, 891 (Bkrtcy. D.Ariz.1992) (another Arizona case holding to the same effect). These decisions serve to illustrate Ninth Circuit courts' proper recognition that in cases where uninsured employer funds have claims against employers for payments made to their injured employees, (1) no private insurance carriers compete with the state to provide such benefits, and (2) claims against uninsured employers accrue "universally against all delinquent employers [whose employees make claims on the uninsured employer fund]." *Id.* at 254–55. Thus, contrary to the majority's conclusion, once the debtor's employee suffered injuries, the debtor did not have the option of "elect[ing] not to use insurance provided by the State."

■ As further noted in the *Camilli* dissent, of particular importance to whether workers' compensation premiums or reimbursements are excise taxes is whether the benefits offered under the particular scheme are state monopolies, or whether employers have an option to obtain coverage from private insurance carriers. *Camilli,* 182 B.R. at 253. Notwithstanding a few early decisions, the modern view regards premiums paid under purely public schemes as excise taxes. *See, e.g., In re Pan American Paper Mills, Inc.,* 618 F.2d 159, 162 (1st Cir.1980). All of the factors so far discussed set the UEF claim at bar distinctly apart from claims for unpaid premiums or partially unpaid premiums made by non-monopoly state workers' compensation insurance funds such as those in *Camilli.*

Furthermore, the distinguishing particulars described also undermine the applicability of the Sixth Circuit Court of Appeals' decisions in *Suburban I* and *Suburban II,* relied upon heavily by the majority in *Camilli.* *Id.* at 250–51 (citing *In re Suburban Motor Freight,* 998 F.2d 338 (6th Cir.1993) and *In re Suburban Motor Freight, Inc.* 36 F.3d 484 (6th Cir.1994) ("*Suburban II* ")). In addition, the *Suburban* cases have other important distinguishing factors, not present in *Camilli,* involving the difference between the dischargeability of debts for workers' compensation premiums—or substitutes for premiums—and the dischargeability of debts, like UEF's claim, based *solely* on benefits paid by uninsured employer funds.

For instance, in *Suburban I*, the court refused to grant priority to claims for unpaid premiums. As discussed, *supra*, the instant claims by UEF are not for unpaid workers' compensation premiums. The claims arise from injured employee benefits paid under an uninsured employer's statute, and therefore require very different analysis.[6] In *Suburban II*, and in *Camilli*, the uninsured employer funds in question received monies directly from portions of premiums paid under the general workers' compensation fund—unlike the UEF. *Suburban II*, 36 F.3d at 486 (interpreting Ohio Rev.Code Ann. § 4123.75); *Camilli*, 182 B.R. at 248 (interpreting A.R.S. § 23–907). Therefore, the so-called "reimbursement" implicated in these cases actually served as a substitute for premiums uninsured employers failed to pay up-front.

On the other hand, Montana's scheme sets up a separate and discrete uninsured employer's fund (the UEF in the instant adversarial proceeding), wholly bifurcated from the state-run workers' compensation insurance fund ("Plan Number Three"), and receiving absolutely no monies from Plan Number Three in any way shape or form. *See*, Mont. Code Ann. §§ 39–71–501 *et seq.*, 39–71–2211.[7] Rather, UEF's funds come solely from involuntary "assessments" (not "premiums") levied on uninsured employers like Debtor. Mont.Code Ann. § 39–71–504. Thus UEF's claim cannot be construed as a substitute for premiums not paid to the state workers' compensation insurance fund, or as a penalty for failure to pay premiums. Moreover, there are certainly no private alternatives competing with the UEF to provide benefits to injured employees of uninsured employers. Because it is a purely public scheme funded solely by involuntary assessments against uninsured employers, UEF's claim does not

compare with those discharged in *Suburban II* and *Camilli*.

Finally, even though Montana's general workers' compensation law provides for premiums paid to Plan Number Three and to private insurance carriers in competition with the state-run Plan, it does not follow therefore that no payments made under Montana's workers' compensation statutes can be designated excise taxes. For instance, Montana has imposed a "workers' compensation old fund liability tax" ("OFLT"). Mont.Code Ann. § 39–71–2501, *et seq.*

Authority for the OFLT emanates from under Chapter 39, Title 71 of the Montana Code as do all other of Montana workers' compensation mandates. The OFLT statute imposes upon all employers and employees within the state (with the exception of certain rail and federal workers) a payroll tax to help defray the state's unfunded workers' compensation liability for injuries incurred before July 1, 1990. Notwithstanding the workers' compensation context of the OFLT, as an involuntary assessment on all employers and employees in the state for the benefit of the general welfare, it clearly meets the Supreme Court's excise tax criteria discussed above. *Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029.

### III.

With the foregoing analysis in mind, this Court now turns to application of the *Lorber* test to the facts at bar. First, the obligations of Debtor and other uninsured employers to the UEF—special fund separate and distinct from Montana's general Compensation Plan Number Three, designated solely for the coverage of injured employees like Debtor's—are involuntary pecuniary burdens, laid universally upon uninsured employers whose

---

**6.** Montana's Workers' Compensation statute removes the legislature from setting "premiums" charged by the state run workers' compensation plan, and there are express provisions for both self-insurance and privately provided insurance. Given this and other factors outlined in *Camilli* and *Suburban I*, claims by the state run plan for unpaid premiums would likely not qualify as a tax, an issue I do not decide here.

**7.** Under the Montana workers' compensation law, all employers shall provide workers' com-

pensation coverage. Mont.Code Ann. § 39–71–401. The employer shall elect one of three plans including (1) self-insurance ("Compensation Plan Number One"); (2) private insurance coverage ("Compensation Plan Number Two"); or (3) coverage under the state compensation insurance fund ("Compensation Plan Number Three"). Mont.Code Ann. § 39–71–2201 *et seq.*; Mont. Code Ann. § 39–71–2301 *et seq.*; Mont.Code Ann. § 39–71–2401 *et seq.*

employees make claims against the UEF, and are not at the uninsured employers' consent. Under the statute, whenever any uninsured employer's employee sustains an injury and makes an uninsured employer's fund claim, the individual uninsured employer becomes liable to the fund unconditionally. Mont.Code Ann. § 39–71–504(2)(a). Debtor must pay the UEF assessment involuntarily for the "purpose of defraying the expenses of government" incurred in compensating Debtor's injured employees only after the occurrence of events outside Debtor's control (i.e., after Mr. Loos suffered unintentional injury and the widow made a successful claim). *Feiring* 313 U.S. at 285, 61 S.Ct. at 1029. Debtor "chooses" to fall under the provisions of the uninsured employer statute by failing to provide workers' compensation insurance only to the same extent that, say, an investor "chooses" to fall under the capital gains provisions of the Income Tax Code by selling appreciated property.

To expand on this point: Under the Montana statute, after Loos' claim against the fund was "paid or to be paid," the character and extent of the obligation of Debtor arose absolutely. Mont.Code Ann. § 39–71–504. Thus, the UEF's assessment against Debtor flows not, as suggested by the majority in *Camilli,* from the terms of "implied voluntary contract with [UEF] . . . for subrogation of monies paid to [Debtor's] employees" made before the fact of the injury. *Camilli,* 182 B.R. at 251. Rather, the obligation arises only after the injury, from express provisions of the Montana Code imposed by the state legislature. Mont.Code Ann. § 39–71–504(2)(a). In other words, UEF's claim against Debtor did not originate, by implication or otherwise, when Debtor chose not to carry workers' compensation insurance. Rather the assessment ensued upon Debtor's involuntary succession to the status of an *injured* employee's uninsured employer claiming benefits against the UEF under Mont.Code Ann. § 39–71–503.

■ The Court finds another distinguishing feature present in both *Camilli,* and in *Payne* upon which the *Camilli* majority relies, absent from the instant facts. In *Camilli* and *Payne* the respective uninsured employer funds paid the injured employees' benefits, and as *subrogees,* "stepped into the shoes" of the injured employees, acquiring the employees' identical legal rights. *Camilli,* 182 B.R. at 251, *Payne,* 27 B.R. at 817. However, the UEF does not "step into the [legal] shoes" of the injured employee under the Montana statute, and does not occupy the status of a subrogee.

■ A subrogee is one who succeeds to the rights of another by subrogation. *Black's Law Dictionary* 1427 (6th ed. 1990). In the case at bar, UEF did not succeed to the rights of Loos under the Montana statute. Under the Montana statute, the Debtor's injured employee has an independent cause of action against Debtor, as an uninsured employer, for failure to carry workers' compensation *independent* of the UEF's claims in the bankruptcy action. Mont.Code Ann. § 39–71–515. Additionally, the UEF's claims are subject to statutory limitations not imposed upon claims an injured employee might choose to pursue. Mont.Code Ann. § 39–71–504(2)(b). Unlike in *Camilli* and *Payne,* the rights and claims allowed under state law to the UEF and the injured employee vary greatly, and can even be cumulative against an uninsured employer, therefore UEF cannot be said to have "stepped into the shoes" of Loos for the purposes of suing the Debtor under common law remedies.

Satisfying the second *Lorber* element, the assessment imposed by UEF against Debtor arises upon the express authority of the Montana legislature. Mont.Code Ann. § 39–71–504(2).

The UEF assessment meets the third element of the *Lorber* test by benefitting the general public in several ways. First, the existence of the UEF benefits all workers everywhere in Montana with the knowledge that they will always be protected by workers' compensation benefits, despite their individual employers' potential lack of coverage. More generally, the entire public benefits unambiguously from having in place a funded source of compensation for all uninsured employers' injured employees. Were the UEF not established, the already heavily burdened public welfare system and state unemploy-

ment insurance fund would bear the weighty liability of providing sustenance to injured workers whose employers failed to purchase workers' compensation insurance. Such an onus would greatly increase state taxpayers' responsibilities, and significantly circumscribe the level of state resources available for other government functions and entitlements. Moreover, the UEF does not serve as a specific or targeted program for the benefit of (insured or uninsured) employers as an alternative to private workers' compensation insurance as does Plan Three.

Finally, the assessment meets the fourth *Lorber* element because clearly, the ultimate authority for the creation of a system designed to serve the public by providing benefits to the injured employees of uninsured employers thereby relieving the distresses a lack of universal workers' compensation creates, arises from Montana's inherent police and taxing powers.

Although the *Lorber* test developed under the Bankruptcy Act, its continued use by the Ninth Circuit BAP confirms the test's viability under the Code. *See, In re George,* 95 B.R. 718, 720 (9th Cir. BAP 1989); *aff'd* 905 F.2d 1540 (9th Cir.1990). Therefore, since all elements of the *Lorber* test are fully satisfied by the UEF's claim against Debtor, Debtor's obligation is in the nature of a tax for purposes of the Bankruptcy Code, specifically 11 U.S.C. § 507(a)(7)(E).

### IV.

█ The Court now turns to the issue of when the "transaction" giving rise to the assessment occurred. Debtor submits the moment actual injury to the employee as the occurrence in question, while UEF argues that the state court system's final determination of the employer's legal liability should be the transaction giving rise to the tax. In this case, "[t]he particular demand for which the [state] now claims priority of payment [and nondischargeability] as a tax is created and defined by state enactment." *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029. The Court therefore must turn to the Montana Code imposing liability on Debtor for instruction on when the UEF's "particular demand" became due.

In perusing the statute, the Court observes that an uninsured employer owes nothing to the UEF unless an injured employee elects to make a claim on the UEF, and if so the assessment is not due until the UEF has paid or has determined the amount " . . . to be paid from the fund to an injured employee of the uninsured employer. . . ." Mont.Code Ann. § 39–71–504. In defining when the UEF "shall receive [payment] from an uninsured employer," the statute never refers to the time of injury. Rather, the statute imposes no liability upon the employer until, at the earliest, the UEF has determined the level of benefits the injured employee shall receive. In fact, in the perhaps unlikely, but far from impossible event that an injured worker chooses to pursue the other common law remedies available under the uninsured employer statute, and makes no claim on the UEF, the employer may never be subject to an assessment by the fund at all. Mont.Code Ann. § 39–71–508.

Thus the injury to Mr. Loos in the case at bar did not, in and of itself, give rise to the assessment against Debtor. The transaction establishing Debtor's liability to the fund was the UEF's determination of the amount "to be paid" to Mrs. Loos. The transaction occurred on the date the UEF and Mrs. Loos agreed on the amount to be paid under the Loos' claim—September 16, 1993. (Def. Post-trial Br.Exh. "B"). Only on that date did the assessment against Debtor become due, and only on that date did the three-year limitation clock of 11 U.S.C. § 507(a)(8)(E)(ii) begin to run. *Pan American Van Lines v. United States,* 607 F.2d 1299, 1303 (9th Cir. 1979) (holding that the three-year limitation period for income taxes begins when the taxes are due). Therefore, in order to defeat the UEF claim's priority and nondischargeability, Debtor would have had to file for bankruptcy after September 16, 1996. Since Debtor in fact filed on May 11, 1995, § 507(a)(8)(E)(ii) provides no refuge.

### V.

The assessment made by UEF against Debtor is an excise tax under *Feiring* and the *Lorber* test. Further, the UEF assessment became due less than three years be-

fore Debtor filed for bankruptcy relief. Therefore UEF's claims against Debtor enjoy priority and nondischargeability.

IT IS ORDERED a separate Judgment on the merits shall be entered in favor of Defendant/Creditor Montana Department of Labor and Industry Uninsured Employers' Fund dismissing all counts of the Complaint and providing that UEF's claim for payments under Mont.Code Ann. § 39–71–504 has priority under 11 U.S.C. § 507(a)(8)(E) and is excepted from discharge under 11 U.S.C. § 523(a)(1)(A).