**In the Matter of PENNSYLVANIA IRON & COAL COMPANY, INC., Debtor.**

**Bankruptcy No. 3–83–00087.**

United States Bankruptcy Court, S.D. Ohio, W.D.

July 26, 1984.

Ira Rubin, Dayton, Ohio, for debtor.

Daniel G. Gehres, Sp. Counsel, Dayton, Ohio, for State of Ohio.

Margaret Quinn, Ass't U.S. Atty., Dayton, Ohio, for the United States.

Kevin R. Abrams, for Ohio Bur. Workers Comp., Columbus, Ohio.

DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

FACTS

This case was instituted by petition for relief under Chapter 11 filed on 18 January

1983 by Pennsylvania Iron & Coal Company, Inc. ["Pennsylvania"]. The Ohio Bureau of Workers' Compensation ["the Bureau"] was scheduled as a general, unsecured creditor in the aggregate amount of $28,279.28.

In pertinent part, among very extensive litigation, the following facts and procedures ensued.

Upon numerous requests by the Debtor, orders were entered *seriatim* granting for cause extensions of time to file schedules and statement of affairs until 25 May 1983, which were eventually filed on 31 May 1983. Likewise, orders were entered, because of pending litigation, extending the time within which Debtor would have the exclusive right to file a plan of reorganization until January 3, 1984. A Plan of Reorganization was filed on 18 December 1983 and an Amended Plan of Reorganization was filed on 19 January 1984.

An order for the 11 U.S.C. § 341(a) meeting of creditors, combined with notice thereof, was entered on 20 January 1983. The combined order and notice contains typical language, as follows: "Any creditor holding a listed claim which is not listed as disputed, contingent, or unliquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before six months from the date of the Order for Relief, except as otherwise provided by law or a different time is later fixed by the Court. Any creditor who desires to rely on the list has the responsibility for determining that he is accurately listed."

On 1 December 1983 the Bureau audited the books of Pennsylvania at the business premises and, also, of Ohio Briquetting Company ["OBC"], owned as partners with Hot Briquetting, Inc., a wholly owned subsidiary.

The assets of both the Debtor and Ohio Briquetting Co. were scheduled as if they were a single entity because it is not possible or practical to separate them; and, also,

because the Debtor as a partner is liable for all of the debts of OBC. Further, OBC's facilities are encumbered by certain industrial revenue bonds in the amount of approximately $450,000.00, for which Debtor would be ultimately liable upon an indemnity agreement.

On 9 February 1984 the Bureau filed a claim (No. 129 on the Claims Register) in the amount of $12,910.25 and on 2 April 1984 it filed a claim (No. 140 on the Claims Register) in the amount of $17,116.56 against Pennsylvania. The aggregate amount of both claims was $28,321.64, or $42.36 more than the amount scheduled by Pennsylvania. These claims were designated on their face as "Priority" claims for "premiums owed."

A Disclosure Statement filed by Debtor on 19 January 1984 was set for hearing on 5 March 1984. An Order Approving Disclosure Statement was entered by the Court on 6 March 1984.

As soon as the attorney for Pennsylvania became aware of the filing of the Bureau claims (on 19 April 1984 and on 27 April 1984), objections to the claims were filed on the basis that they were filed after the bar date for filing claims as fixed by the Court and that they were not legally entitled to "priority" status. A hearing was set for 25 June 1984.

On 4 June 1984 the Bureau filed a "Motion to Establish Priority Status and to Extend Time for Filing Proof of Claim Pursuant to Rule 9006 in Response to Debtor's Objection to Claims." Debtor filed a reply memorandum on 25 June 1984 and the Bureau filed a "Reply Memorandum to Memorandum" on 2 July 1984.

## DECISION

### I

Considerable attention has been devoted by the Attorneys for both parties to rationalize whether or not the proofs of claims filed by the Bureau can be considered because they were filed after the original bar date (July 18, 1983) for filing claims as fixed in the § 341 meeting order and notice.

In behalf of Pennsylvania it is urged, as follows:

As to the branch of its Motion seeking a *nunc pro tunc* extension of time in an attempt to validate its late filed claims, Workers Compensation takes the position that it was not possible for it to timely file its claims because of delays encountered in determining the amounts owed; because Pennsylvania and its affiliate, Ohio Briquetting Company, had two different risk numbers; and that it was necessary for an audit to be performed and that the audit could not be completed until December, 1983 because the Debtor ceased operations for eight months after the filing of its Petition in this proceedings. It claims that these factors demonstrate excusable neglect for its failure to file its claims for some 201 days (Claim No. 129) and 254 days (Claim No. 140) after the last day to file claims as fixed by Order of this Court.

It is urged by Pennsylvania that, "On July 18, 1983, when the time to file claims in this case expired, former Rule 906 was in force and, under its provisions, no extension of time within which to file a claim could be granted after the time for the filing of claims had expired."

This Court concurs with the view of counsel for Pennsylvania in commenting upon the Bureau's laxity in filing claims, that, "the attitude of Workers Compensation can best be described as one of indifference to the time limitations in this case; the needs of the Debtor to have knowledge of claims against it within a reasonable period of time so as to permit it to formulate a Plan and file an accurate Disclosure Statement; and to permit the Court and other creditors to intelligently assess the Debtor's overall financial picture in connection with its Plan and Disclosure Statement."

Whether such patent dereliction in litigating its claim and ignoring bankruptcy court necessary procedures and jurisdiction was especially prejudicial to Pennsylvania is not entirely certain, nevertheless, for several reasons. First, it must be noted that Pennsylvania itself did not abide by statutory time periods as contemplated when the six-months bar period for claims was incorporated into the Rule 2002 order and notices. It may fairly be concluded that this date became practically moot. Pursuant to extension orders requested by Pennsylvania, a plan of reorganization and approval of a disclosure statement was not processed until 6 March 1984, when the court entered an order approving a disclosure statement and setting the date for a hearing on confirmation of a plan.

Further, the amounts contained in the proofs of claims (despite the dereliction of the Bureau in not complying with court procedures, and not even seeking court leave for a delayed filing), are not the crucial issue. Rather the issue of whether the claims should be accorded excise tax priority status is the crucial problem.

With reference to granting leave *nunc pro tunc* to file the proofs of claim after the bar date, the result would be the same under Interim Bankruptcy Rule 3001 (in effect when the case was filed) as under present Rule 3003. Under Interim Rule 3001(b)(3), "a proof of claim may be filed at any time prior to the approval of the disclosure statement unless a different time is fixed by the court on notice as provided in Rule 2002." (as herein). This Rule does not preclude changing an earlier court fixed bar date for cause. Furthermore, the Order of the Supreme Court of April 25, 1983, adopting the current Bankruptcy Rules, effective August 1, 1983, specifically provides the current Rules "shall be applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice, in which event the former procedure applies." See Supreme Court Order in 6 Bkr.L.Ed. § 51:87.

Under either the prior Rule or present Rule 3003(c)(3), requests to extend the time to file the late claims herein would invoke the court's discretion "for cause shown." The Bureau's delay from January, 1983, until February, 1984, demonstrates such a lack of regard for the court

jurisdiction as to dictate cause for not extending the time to file claims to the prejudice of a debtor and other interested parties. If the delay in conducting an audit herein was reasonably the fault of circumstances beyond the control of the Bureau, such facts should have been timely presented to the court by a reasonable request for extension of time.

The prejudicial effect of such disregard of necessary and proper claims procedures, however, is tempered by statutory provisions not affected by the Bankruptcy Rules promulgated by the U.S. Supreme Court. In a Chapter 11 Reorganization case only creditors holding disputed, contingent, or unliquidated claims as scheduled are required to file claims. Not scheduling the claim by the debtor as a priority claim should not be deemed to constitute as a matter of law an objection *per se* to the claim, and thus put the priority of the claim in "dispute". Such an issue can only be raised as a contested matter pursuant to Rules 3007, 9014 and sections of Rule 7000 as made applicable.

Hence, the claim should be allowed as an unsecured claim in the amount as scheduled, but the *prima facie* effect of a proof of claim is not pertinent to a determination of its priority, since the claims were not filed in accordance with the rules. Rule 3001(f).

## II

█ The statutory allowance of the claims in the amount as scheduled does not, nevertheless, preclude raising objections by Pennsylvania as to the appropriate priority thereof, as a contested matter pursuant to Rule 9014. The proper procedure was followed by the filing on 23 April 1984 of the objections to various claims, including the claims of the Bureau in effect allowed by statute, in the amount scheduled.

Thus, the validity of the claims and the amount as scheduled are not at issue, but only the proper priority for distributions under the Plan of Reorganization.

The Plan of Reorganization, as filed on 12 December 1983 and amended on 19 January 1984, does not classify the Bureau in any particular priority. It merely provides that "all taxes and other impositions owing to governmental units allowable under Section 507(a)(6) of the Code shall be paid in full, in cash, in ten equal installments ..." (as Class 5) and all "non-priority Unsecured Claims, including those of governmental units otherwise not allowable under Section 507(a)(6) of the Code ... shall be paid, in cash, fifteen percent (15%) of their respective allowed claims...." (as Class 7). Consequently, the priority status of any particular class of unsecured creditors was not made justiciable at the hearing on confirmation. The issue was not raised and the Bureau had no reason to object to confirmation, as the Plan did not refer to the schedules or the manner of listing the creditors to place priority at issue. Elementary due process of law certainly mandates that objection to the priority status of claims cannot be effected by ambush. Failure to file a proof of claim conformably to the Rules as a procedural matter should not be construed to negate substantial rights to priority status pursuant to the statutes. (11 U.S.C. § 507).

Article II, § 35 of the Constitution of the State of Ohio, effective January 1, 1924, enables the general assembly to legislate for "the compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment...." as the prerogative and offical power of the state. "Such compensation shall be in lieu of all other rights to compensation, or damages...." "[L]aws may be passed establishing a state fund to be created by compulsory, contribution by employers, and administered by the state...." The purpose of the workmen's compensation act is to require as a matter of justice that injuries to workmen sustained in the course of employment be regarded as a charge upon the business and compensation paid there for. *Industrial Comm. v. Gintert*, 128 Ohio St. 129, 190 N.E. 400.

The use of semantics to designate such exercise of powers as "insurance" rather than "excise taxes" is in no fashion derived from the constitutional provisions and, also,

is not dispositive of the crucial tests involved in applying the federal bankruptcy law, either as to nondischargeability or as to the priority of claims against an estate.

Adverting to this court's unreported opinion in *Matter of Wayland Harris Fellers*, Case No. 19283 (December 12, 1963), it was there emphasized that: "when it is realized, however, that the State of Ohio may not only force compliance, and assess the employer for the amount of premiums applicable to any period of noncompliance; but also, may enjoin an employer from further operation of business, the words "insurance", and "workmen's compensation fund" become less inconsistent. The law of Ohio is replete with governmental burdens imposed on a class of taxpayers, with the funds being encumbered for special purposes."

This court's opinion in *Fellers* was based upon an interpretation of Section 64(a)(4) of the Bankruptcy Act (11 U.S.C. § 104) and the basic fact that "premium payments" are taxes because they constitute a pecuniary burden to support a governmental purpose and exacted by legislative authority.

It should be particularly further emphasized now that the federal priority statute has been changed and further clarifies the status of such levies. See, also, *In Re Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir.1980). Adverting to 11 U.S.C. § 507(a)(6)(E), the sixth priority definitely includes "excise" taxes. An excise is an exercise of governmental authority more inclusive in connotation than taxes imposed directly by the legislature without assessment. An excise is an impost for the right or license to engage in certain businesses or dealings. *East Ohio Gas Co. v. Tax Commission of Ohio* (D.C.Ohio), 43 F.2d 170, 172. An excise tax is: " ... practically any tax which is not an *ad valorem* tax ...., imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege...." *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941).

The extensive analysis of other authorities and case precedents in this court's *Fellers* decision interpreting Section 64 of the Bankruptcy Act need not be repeated herein. It should be noted that the same conclusions have been reached under more recent cases in states in which employers are directly assessed by the state for workers' compensation system systems, in interpreting § 507(a)(6)(E). See *In Re Pan American Papers Mills, Inc.*, 618 F.2d 159 (1st Cir.1980); *In Re Beaman*, 9 B.R. 539, 7 B.C.D. 384, 4 C.B.C.2d 157 (Bkrtcy.D.Ore. 1980); *In Re International Automated Mach., Inc.*, 9 B.R. 575 (Bkrtcy.N.D.Ohio, 1981); *In Re Payne*, 27 B.R. 809, 10 B.C.D. 193, 9 C.B.C.2d 47, BLD ¶ 69285 (Bkrtcy. 1983), distinguishing the State of Kansas statutes as to dischargeability.

Further, the historical evolution and benefits of state mandated workers compensation (as discussed in great detail by this Court in *Fellers* ) is often overlooked. It must be remembered that more than "workers" compensation is involved. Another important governmental function and policy accomplished was the deprivation to or limitation of common law rights of employees to seek damages in the Courts against employers for work related injuries. Hence, employers also benefit from the mandatory assessments to support this governmental function.

It is concluded, therefore, that the request for a *nunc pro tunc* order to grant leave to the Bureau to file a late proof of claim should be denied; but, that the claim as scheduled by Pennsylvania be allowed as a tax claim pursuant to 11 U.S.C. § 507(a)(6)(E).