### In re SUBURBAN MOTOR FREIGHT, Debtor.

### Bankruptcy No. 2–87–00822.

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 6, 1991.

See also 124 B.R. 984.

E. James Hopple, Schottenstein, Zox & Dunn, Columbus, Ohio, for debtor.

Larry Rhodebeck, Office of Ohio Atty. Gen., Columbus, Ohio, for Bureau of Workers' Compensation.

Stephen K. Yoder, Harry Wright, IV, Bricker & Eckler, Columbus, Ohio, for Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER ON OBJECTION TO CLAIM

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Facts*

Suburban Motor Freight, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 27, 1987. The Bureau of Workers' Compensation ("Bureau") filed a proof of claim on July 20, 1987, founded upon the Debtor's failure to pay workers' compensation premiums as required by Ohio Revised Code § 4123.35. The claim classifies the unpaid premiums as excise taxes entitled to a priority in distribution of the assets of the estate under 11 U.S.C. § 507. The Bureau amended its proof of claim on November 9, 1987, simply to change the amount of the claim from $291,250.21 to $533,563.62.

The Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on May 23, 1988, follow-

ing which Stephen K. Yoder was appointed trustee ("Trustee"). On December 11, 1990, the Trustee filed an objection ("Objection"), stating that "[c]laims for unpaid workers' compensation premiums are not entitled to priority status as a matter of law." The Trustee asserted therein that the Bureau's amended proof of claim (the "Claim") should be allowed as an unsecured claim without priority in distribution.

The Bureau, in its response filed on January 4, 1991, argues that the Claim is for unpaid taxes, thereby entitling the Claim to priority status under 11 U.S.C. § 507(a)(7)(E). The Bureau asserts further that this Court's ruling in *State of Ohio, Bureau of Workers' Compensation v. Tri-Manufacturing and Sales Co.*, 82 B.R. 58 (Bankr.S.D.Ohio 1988), is *stare decisis* as to this issue. The Trustee argues, in his response of March 18, 1991, that the Claim is based upon unpaid fees, not taxes, and thus is not entitled to priority status under 11 U.S.C. § 507. The Trustee does not dispute the amount of the claim.

A hearing on the Objection was held on March 25, 1991. The parties, representing that there were no disputed issues of fact, requested and were granted an opportunity to file briefs. The parties also indicated they would file a joint stipulation of facts. Prior to the completion of briefing, the Bureau filed a Motion to Take Judicial Notice of certain matters. The Trustee responded to the motion, asserting that the Bureau was seeking to introduce facts which were not of record. The Court held a hearing on the Bureau's motion on October 21, 1991, by which time briefing had been completed, to determine, *inter alia*, whether there were genuine issues of material fact and whether the parties intended to stipulate any facts. At the hearing, the parties requested that the Court suspend its consideration of the motion while they attempted to reach such stipulations. Joint stipulations of fact were filed on October 30, 1991.

The following stipulations describe the general operation of the workers' compensation system in Ohio:

Each January and July, the Bureau of Workers' Compensation issues payroll-report forms to employers. Employers are given two months to file the reports, reporting the payroll for the preceding six months. A.C. 4121–7–14(A) and 4121–9–07(A). Upon receipt of the report and payroll, the Bureau issues a certificate of coverage for the ensuing eight month period, January 1 to August 31, or July 1 to February 28/29. R.C. § 4123.35.

The Ohio Workers' Compensation law establishes a "State Insurance Fund" to pay the injured employees. R.C. § 4123.-29. The money collected from employers is placed in the workers' compensation fund and not in the general revenue fund of the state. R.C. § 5123.31. The money which supports the fund comes from the employers of the state and any shortfall in the fund is made up by an increase in the assessments paid by employers and not from the general tax revenues of the state. R.C. § 4123.29. The monies in the fund are collected in the form of semi-annual premiums from all employers doing business in Ohio. R.C. § 4123.-35. The cost of administering the insurance fund is prorated among employers in the state. R.C. § 4123.342.

The fund is supported entirely by the collection of premiums from employers including the State of Ohio, its agencies, and subdivisions, and the premiums are based on a formula which takes into account the degree of hazard of an occupation, total payroll of an employer and other factors. R.C. § 4123.29. If an employer does not fit into the formula, the Ohio Industrial Commission is required to determine rates on other cases "consistent with insurance principles." R.C. § 4123.29. The fund is audited by recognized insurance actuaries. R.C. § 4123.-47.

*See* Stipulations of Facts, Nos. 5–7.

## II. *Conclusions of Law*

■ The Court is vested with jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district.

This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(2)(B).

The Claim seeks priority status under 11 U.S.C. § 507(a)(7)(E), which provides:

(a) The following expenses and claims have priority

.     .     .     .     .

(7) . . . allowed unsecured claims of governmental units, only to the extent that such claims are for—

(E) An excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

*See also New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714, 719 (4th Cir.1989) ("only type of tax possibly given priority status by the Code, which could be interpreted to include Workers' Compensation premiums, is an excise tax"). Accordingly, the Claim has priority status in bankruptcy only if it can be characterized as an excise tax. It is undisputed that the Bureau is a governmental unit of the State of Ohio.

The Trustee's argument can be stated generally: The Claim should be treated as a general unsecured claim because the Debtor's unpaid premiums cannot be construed as excise taxes within the meaning of 11 U.S.C. § 507(a)(7)(E). The Bureau contends that its Claim is a claim for an excise tax under § 507(a)(7)(E). Thus, the sole issue before the Court is whether the Claim, based upon the Debtor's unpaid workers' compensation premiums, is a claim for unpaid excise taxes within the meaning of § 507(a)(7)(E).

**1.** Although the Court has been unable to locate an official citation, the media report that a writ of certiorari has been filed with the Supreme Court in *Mansfield Tire.* Thomas W. Gerdel,

The determination of whether a particular exaction is a tax within the purview of bankruptcy law is a federal question. *United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.),* 942 F.2d 1055, 1059 (6th Cir.1991)[1] (citing *City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1914)); *New Neighborhoods,* 886 F.2d at 718. However, inferences from relevant state law may be drawn. *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029. *See also In re Adams,* 40 B.R. 545 (D.E.D.Pa.1984); *In re Smith Jones, Inc.,* 36 B.R. 408, 410 (Bankr. D.Minn.1984). Hence, the Court's inquiry may incorporate both federal and state law.

### A. The Definition of a "Tax" Within the Meaning of the Bankruptcy Code

The Bankruptcy Code makes no effort to define "tax" or "excise tax." Although there is no definition of these terms in the Code, it has been held that an excise tax is:

. . . an indirect tax, one not directly imposed upon persons or property, and is one that is 'imposed on the performance of an act, the engaging in any occupation, or the enjoyment or [sic] a privilege.'

*New Neighborhoods,* 886 F.2d at 719 (citing *Green v. Beaman (In re Beaman),* 9 B.R. 539, 541 (Bankr.D.Kans.1980); *State of Ohio, Bureau of Workers' Compensation v. Tri–Mfg. and Sales Co. (In re Tri–Mfg. and Sales Co.),* 82 B.R. 58, 60 (Bankr. S.D.Ohio 1988)). *See also In re Metro Transportation Co.,* 117 B.R. 143, 153 (Bankr.E.D.Pa.1990). An excise tax also has been described as an impost for the right to engage in a certain business or transaction. *Matter of Pennsylvania Iron & Coal Co., Inc.,* 40 B.R. 918, 922 (Bankr. S.D.Ohio 1984) (citing *East Ohio Gas Co. v. Tax Comm'n of Ohio,* 43 F.2d 170, 172 (S.D.Ohio 1930)). The label given by a statute to a particular obligation is not conclusive, however. *Mansfield Tire,* 942 F.2d at 1060 (citing *New Jersey v.*

*Lawyers From Mansfield Tire Appeal Tax Ruling,* The Plain Dealer, November 30, 1991, at 1-E.

*Anderson,* 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906)); *New Neighborhoods,* 886 F.2d at 718 (citing *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029). The substance of the obligation, and not the label, is the determining factor. *New Neighborhoods,* 886 F.2d at 718.

Both parties have embraced the Supreme Court's definition of the term "tax" in *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029: "[T]he priority commanded by § 64 extends to those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." [2] In *Feiring,* the Supreme Court held that a tax laid upon receipts from sales of personal property was a tax entitled to priority in payment under the Act.

■ The Ninth Circuit, relying on *Feiring,* ruled that for the charges at issue— sewer user fees—to be classified as taxes entitled to priority under the Act, the charges must satisfy two requirements: first, they must be "taxes" as defined by federal law; and second, their classification as priority claims must be consistent with the terms and purposes of § 64(a) and other provisions of the Act. *County Sanitation Dist. No. 2 of Los Angeles County v. Lorber Industries of California, Inc. (In re Lorber Industries of California, Inc.),* 675 F.2d 1062 (9th Cir.1982) ("*Lorber*") (citing *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029). The court, citing *New Jersey v. Anderson,* 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906) and *National Cable Television v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), also noted that taxes are nonconsensual and involuntary. *Lorber,* 675 F.2d at 1066. In order to distinguish between taxes and nontax charges, the *Lorber* court developed the following test:

An obligation is a tax if it is:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*Id.* at 1066 (quoting *In re Farmers Frozen Food Co.,* 221 F.Supp. 385, 387 (N.D.Cal. 1963) (footnotes omitted) *aff'd,* 332 F.2d 793 (9th Cir.1964)). The court held that the sewer user fees, owed to a county sanitation district for the discharge of industrial wastewater, were fees, not taxes, and therefore not entitled to priority status under § 64 of the Act.

The Trustee urges us to adopt the test drawn from *Lorber.* The Bureau disagrees, arguing that the Sixth Circuit rejected this test in *Mansfield Tire,* 942 F.2d at 1057 n. 2. The Court's reading of *Mansfield Tire* and *Lorber* does not support such a conclusion. In *Mansfield Tire,* the Sixth Circuit was required to determine whether an exaction defined as an excise tax in the Internal Revenue Code was an "excise tax" under § 507(a)(7)(E) of the Bankruptcy Code. The court gave deference to the plain language of the Internal Revenue Code in finding the exaction to be an excise tax, but cautioned as follows:

We do not hold that any exaction deemed an excise tax by a body other than Congress is entitled to the same deference. In cases of state and local exactions it may be appropriate to more closely examine the particular governmental claim to determine whether it truly is in the nature of a "tax" as that term is used by Congress. This is because the question whether a particular exaction is a "tax" within bankruptcy law is a federal question. While a federal court may ultimately be called upon to decide the question where a state or local exaction is at issue, in this case we are concerned with a federal excise tax. Where Congress has exercised its constitutional

---

**2.** Section 64 is a provision of the Bankruptcy Act of 1898 (the "Act"), now repealed, which awarded priority status to "taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof."

power and deemed an exaction an "excise tax," the question has been answered. *Mansfield Tire,* 942 F.2d at 1059. The Sixth Circuit made reference to *Lorber* in the following statement:

> Both *Lorber* (county sewer user fees) and *Farmers* (state agricultural assessments) concerned whether *non-federal* levies constituted "taxes" for purposes of federal bankruptcy priority. In addition, those cases did not concern exactions which had been labeled as "excise taxes." As we have indicated, *infra,* reliance on this line of cases in the context of a congressionally levied tax is inappropriate.

*Id.* at 1057 n. 2. Thus, it cannot be said that the Sixth Circuit rejected the *Lorber* test in *Mansfield Tire.* Rather, it merely excluded the application of *Lorber* from a determination as to whether a *federal* excise tax labeled as such was entitled to priority in distribution. The Court thus finds that application of the *Lorber* test is appropriate here.

### 1. *Involuntary Pecuniary Burden*

■ Applying the first prong of the *Lorber* test, the Court determines that the Debtor's obligation to make payments to the Bureau is an involuntary pecuniary burden. This conclusion is supported by the fact that Ohio does not allow private workers' compensation insurance; Ohio's system is mandatory.

> All contracts and agreements are void which undertake to indemnify or insure an employer against loss or liability for the payment of compensation to workers or their dependents for death, injury, or occupational disease occasioned in the course of the workers' employment, or which provide that the insurer shall pay the compensation, or which indemnify the employer against damages when the injury, disease, or death arises from the failure to comply with any lawful requirement for the protection of the lives, health, and safety of employees, or when the same is occasioned by the willful act of the employer or any of his officers or agents, or by which it is agreed that the insurer shall pay any such damages. No license or authority to enter into any such agreements or issue any such policies of insurance shall be granted or issued by any public authority in this state....

O.R.C. § 4123.82(A). The Ohio system does permit certain employers to "self-insure," but this privilege is severely limited. O.R.C. § 4123.35(B). *See also* 93 O.Jur.3d *Workers' Compensation* § 359 (1989).

Additionally, a noncomplying employer is subject to a lien, similar to that imposed for the nonpayment of taxes. O.R.C. §§ 4123.37 and 4123.76. Further, the obligation to pay premiums is imposed on Ohio employers as a class; an employer is not given a choice as to whether he desires coverage. The statutory definition of "employer" is all-encompassing; an employer is a firm, person, or corporation who regularly employs one or more persons. O.R.C. § 4123.01(B)(2). Payment of workers' compensation premiums, therefore, is an involuntary burden imposed on Ohio employers.

### 2. *Imposed By or Under the Authority of the Legislature*

In Ohio, workers' compensation premiums are imposed by or under the authority of the legislature. The Trustee does not dispute this fact. *See* Trustee's Reply Brief, p. 8.

The Ohio Constitution authorizes the state legislature to enact laws to establish a state workers' compensation fund.

> For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom.

*Ohio Const.* art. II, § 35. The Ohio Workers' Compensation Law, Chapter 4123 of the Ohio Revised Code, was enacted as a result of this constitutional grant of au-

thority. Hence, the Bureau has satisfied *Lorber*'s second prong.

### 3. *Public Purpose*

The public purpose served by an obligation to pay workers' compensation premiums is the allocation of the costs of injured employees and their dependents among employers rather than among the general public. *See New Neighborhoods*, 886 F.2d at 718–19. However, the Trustee contends that the funding of the workers' compensation system is not for a public purpose; rather, the fund benefits two specific groups, employers and employees. This argument is unpersuasive. The general public is served by the system's compensation of those employees who would probably require public support if their tort claims against employers were not successful. *See id.* The purpose of the premiums—to fund the state workers' compensation fund—defrays Ohio's expenses in connection with the fund. The workers' compensation fund thus represents a governmental, public purpose.

### 4. *Imposed Under the Police or Taxing Power of the State*

In order for the fourth and final prong to be met, it is essential that the premiums be imposed under the state's police *or* taxing power. *Lorber*, 675 F.2d at 1066 (emphasis added). The Trustee contends that, although the workers' compensation system is mandatory for employers, the premiums are regulatory, not revenue-raising, and, therefore, are not taxes. The Fourth Circuit determined that West Virginia workers' compensation premiums were a tax even though the West Virginia Workers' Compensation Act was enacted pursuant to the state's police power. *New Neighbor-*

*hoods*, 886 F.2d at 720. However, under the *Lorber* analysis it is not necessary to distinguish between the taxing and the police powers of a state because the premiums may be imposed under *either* power.[3]

The Ohio Workers' Compensation statute was enacted pursuant to the state's police power. *State, ex rel. Yaple v. Creamer*, 85 Ohio St. 349, 97 N.E. 602 (1912). Thus, the final prong of the *Lorber* test is satisfied.

### B. *Analysis of the Relevant Case Law*

Additional support for the conclusion that Ohio workers' compensation premiums are an excise tax entitled to priority may be found in two Sixth Circuit opinions which decided the priority of certain mine operation payments.[4] *United States v. River Coal Company, Inc.*, 748 F.2d 1103 (6th Cir.1984); *Spiers v. Ohio Dep't of Natural Resources (In re Jenny Lynn Mining Co.)*, 780 F.2d 585 (6th Cir.1986), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). Neither case mentions *Lorber*.

*River Coal*, decided under the Act, held that abandoned mine reclamation fees were taxes for purposes of bankruptcy priority. 748 F.2d at 1106. The charge in question was an exaction imposed on mine operators for the purpose of creating a fund to be used for "reclamation and restoration of land and water resources adversely affected by past coal mining." *Id.* All mine operators, each of whom had already paid a permit fee in order to operate a mine, were to deposit a set sum of money into the fund according to the amount of coal produced. *Id.; see* 30 U.S.C. § 1232(a). The court's analysis began with a reference to the Supreme Court's decision in *National Cable:*

---

**3.** It is necessary to mention *Brock v. Washington Metro. Area Transit Auth.*, 796 F.2d 481 (D.C.Cir.1986), which held that payments to the District of Columbia's Workers' Compensation scheme were fees and not taxes. The court in *Brock* reasoned that the purpose of the workers' compensation statute was regulation, not revenue-raising. *Id.* at 488. "If regulation is the primary purpose of a statute, revenue raised under the statute will be considered a fee rather than a tax." *Id.* (quoting *South Carolina v. Block*, 717 F.2d 874 (4th Cir.1983)). This decision, however, is distinguishable from the in-

stant case in that it was not decided in a bankruptcy context. The decision does not interpret the term "excise tax" for purposes of 11 U.S.C. § 507(a)(7)(E), and thus is of little precedential value.

**4.** The Code section at issue in these cases was 11 U.S.C. § 507(a)(6)(E) (1978). The section has since been renumbered as 11 U.S.C. § 507(a)(7)(E) (Supp. II 1982), the Code section presently at issue.

"Congress may impose a tax without regard to the benefits bestowed on the taxpayer, considering only the need for revenue to fund the government's public functions. 'A fee, however, is incident to a voluntary act....'" *River Coal*, 748 F.2d at 1106 (quoting *National Cable*, 415 U.S. at 340–41, 94 S.Ct. at 1149).

The court then employed the following test to determine whether the charge was a fee or a tax for purposes of bankruptcy priority: "The test has been variously stated, but the chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer." *River Coal*, 748 F.2d at 1106. Although the reclamation fee at issue was found to possess the essential characteristics of a tax, the court noted a clear distinction between the fee in question and mining permit fees. *Id.*

This distinction was the basis for the holding in *Jenny Lynn* that the permit fee required to conduct a strip-mining operation was not an excise tax entitled to distributive priority in bankruptcy. 780 F.2d at 588.

> The permit is issued at the request of an operator and bestows an individual benefit—the privilege of operating a surface mine—on the applicant. It is similar to a license to practice a profession or to conduct a broadcast station. The abandoned mine reclamation fee is quite different. It is imposed as an additional charge on operators who have already received permits. Unlike the permit fee, the reclamation fee does not confer a benefit on the operator different from that enjoyed by the general public when environmental conditions are improved. On the contrary, it is an involuntary exaction for a public purpose—to create a fund to be used for "reclamation and restoration of land and water resources adversely affected by past coal mining."

*Id.* (quoting *River Coal*, 748 F.2d at 1106). *See also Williams v. Motley*, 925 F.2d 741, 743–44 (4th Cir.1991) (adopts *River Coal*).

Although the exactions involved here differ from those at issue in *Jenny Lynn* and *River Coal*, the principles articulated are apposite. In *Jenny Lynn* and *River Coal*, the Sixth Circuit distinguished between a permit fee and a reclamation fee for purposes of tax priority in bankruptcy. *Jenny Lynn*, 780 F.2d at 588 (quoting *River Coal*, 748 F.2d at 1106). The permit fee found not to be a tax in *Jenny Lynn* was analogized to a licensing fee that members of a profession are required to pay. The reclamation charge held to be a tax entitled to priority in *River Coal* may be analogized to workers' compensation premiums, because, like mine reclamation charges, premiums are exacted involuntarily and do not confer an individual benefit on the employer different from that enjoyed by the public generally.

The key to the Sixth Circuit test as articulated in *River Coal* and *Jenny Lynn* of determining whether a particular exaction is a tax or a fee is the existence of an individual benefit or privilege: a fee bestows an individual benefit while a tax is an involuntary burden, which ultimately bestows a benefit upon the general public. The payment of workers' compensation premiums does not bestow any individual benefit upon the payor. It benefits the public generally. Under this analysis, the premiums are more properly classified as a tax.

It is noteworthy that a majority of the courts addressing the issue presently before the Court have determined that workers' compensation premiums are tax obligations entitled to priority in bankruptcy. The First Circuit, addressing whether premiums due under the Puerto Rico Workmen's Accident Compensation Act were a tax for purposes of bankruptcy priority, held that the claim for unpaid premiums was entitled to priority under § 64(a)(4) of the Act. *In re Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir.1980). The court reasoned that the premiums were a tax under the *Feiring* definition: "[P]ecuniary obligations laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Pan American*, 618 F.2d at 162. While addressing a different

issue, the Sixth Circuit, in *State of Ohio v. Mansfield Tire and Rubber Co. (In re Mansfield Tire and Rubber Co.)*, 660 F.2d 1108 (6th Cir.1981), cited *Pan American* with approval, stating *in dicta:* "Claims for unpaid premiums against bankrupt employers are entitled to priority under section 64(a)(4) of the Bankruptcy Act of 1898." *Id.* at 1110 (citing *Pan American*, 618 F.2d 159).

The Fourth Circuit is the only circuit court of appeals which has decided the instant issue under the Bankruptcy Code. *New Neighborhoods*, 886 F.2d 714. In holding that claims for unpaid workers' compensation premiums are entitled to priority under section 507(a)(7)(E), the court concluded that such premiums constitute involuntary pecuniary burdens imposed for a public, governmental purpose. *Id.* at 718 (quoting *Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029). The court's focus was on aspects of the West Virginia statute which *compelled* employers either to pay premiums into the state fund or carry substitute insurance, and on the fact that the fund existed for the *public* interest. *New Neighborhoods*, 886 F.2d at 719–20 (emphasis added).

A number of bankruptcy courts also have addressed whether unpaid workers' compensation premiums constitute excise tax obligations entitled to priority status under § 507. The overwhelming weight of authority is that such premiums are excise taxes for bankruptcy priority purposes. *See In re Carlton Enterprises, Inc.*, 103 B.R. 876 (Bankr.N.D.Ohio 1989); *In re Primeline Industries, Inc.*, 103 B.R. 861 (Bankr.N.D.Ohio 1987); *State of Ohio, Bureau of Workers' Compensation v. Tri–Mfg. and Sales Co. (In re Tri–Mfg. and Sales Co.)*, 82 B.R. 58 (Bankr.S.D.Ohio 1988); *E.A. Nord Co., Inc. v. State of Washington, Dep't of Labor and Industries (In re E.A. Nord Co., Inc.)*, 75 B.R.

634 (Bankr.W.D.Wash.1987); *Ravenna Indus., Inc., M.F. v. Ohio Bureau of Workers' Compensation (In re A.C. Williams Company)*, 51 B.R. 496 (Bankr.N.D.Ohio 1985); *Matter of Pennsylvania Iron & Coal Co., Inc.*, 40 B.R. 918 (Bankr.S.D.Ohio 1984); *In re Int'l Automated Machines, Inc.*, 9 B.R. 575 (Bankr.N.D.Ohio 1981); *Green v. Beaman (In re Beaman)*, 9 B.R. 539 (Bankr.D.Ore.1980) (obligation of employer to reimburse state of Oregon for payments made to employees of uninsured debtor are excise taxes).[5]

At least three cases have held that workers' compensation premiums should not be given priority status in bankruptcy. *See In re Metro Transportation Co.*, 117 B.R. 143 (Bankr.E.D.Pa.1990); *In re Smith Jones, Inc.*, 36 B.R. 408 (Bankr.D.Minn. 1984); *In re Payne*, 27 B.R. 809 (Bankr. E.D.Kans.1983). *Metro Transportation* held that Pennsylvania workers' compensation premiums were not an excise tax entitled to priority. The court distinguished between the Pennsylvania statute and the West Virginia statute at issue in *New Neighborhoods:*

> By way of contrast to the West Virginia law, the Pennsylvania Act is not a revenue-raising statute for the benefit of the general public. It is, rather, a statute intended to regulate employers' liability for work-place accidents and injuries. Contribution to the Fund is not a burden shared by all taxpayers indiscriminately. Only a very specific group of taxpayers contribute to the Fund. Premiums paid to it are not mandatory payments for that group either, as they may elect to self-insure or obtain comparable insurance from a private insurer elsewhere. The latter option is not available to West Virginia employers, placing the Fund, in Pennsylvania, on a par with numerous private insurers. The benefits from the Fund are also earmarked for a very specific group: those injured in the work-

**5.** The Court notes that the issue of whether Ohio workers' compensation premiums are entitled to priority has not been litigated in three of the listed decisions from the Northern District of Ohio. *Carlton Enter.*, 103 B.R. 876; *Primeline*, 103 B.R. 861; *A.C. Williams*, 51 B.R. 496. The earliest of these cases, *A.C. Williams*, states:

"[T]he Bureau filed a proof of claim for unpaid premiums … which was allowed as a priority claim pursuant to section 507(a)(6) by order of January 5, 1983." This is the only reference to the issue in that opinion. The subsequent two opinions hold the same, based on the issue as presented in *A.C. Williams*.

place whose employers are contributors to the Fund. Thus, the Fund's charges have very little similarity to a "tax".

*Id.* at 154.

The Ohio workers' compensation system more closely resembles West Virginia's system than Pennsylvania's. The key distinction lies in the mandatory aspects of West Virginia and Ohio's workers' compensation schemes; private workers' compensation insurance is prohibited in both states. *See* O.R.C. § 4123.82(A); W.Va. Code § 23–2–7. Pennsylvania's system, however, is permissive. Pennsylvania employers have an option that is not available to West Virginia and Ohio employers; Pennsylvania employers, in addition to the choice of procuring insurance through the Workmen's Compensation Fund or self-insuring, also may opt to purchase private insurance. *See Metro Transp.,* 117 B.R. at 145. This distinction is critical.

The decision in *Payne,* based on Kansas law, is distinguishable on similar grounds. The Kansas Workers' Compensation Act, unlike that of Ohio and West Virginia, permits private insurance. Additionally, unlike Ohio's statute, the Kansas statute does not grant a lien against an employer's property for nonpayment of premiums. *Payne,* 27 B.R. at 812–16.

The only case construing Ohio law which has determined that premiums are not entitled to priority status under the Bankruptcy Code is *Smith Jones,* 36 B.R. 408. The court reasoned therein that such premiums are not for the general benefit of the people of Ohio, and that even though the state administers the workers' compensation system, it is still a fact that the fund is for insurance purposes: "The premiums are *premiums.*" *Id.* 36 B.R. at 410.

This Court cannot accept the bankruptcy court's reasoning in *Smith Jones.* Workers' compensation premiums do inure, in fact, to the general benefit of Ohio residents. Moreover, the obligation to pay premiums, as seen in the Court's foregoing analysis, possesses all the characteristics of a tax as defined in both *Feiring* and *Lorber.* Ohio's requirement that such payments be made to the Bureau is thus an excise tax on employers.

The Court disagrees with the assertion of the Bureau that principles of *stare decisis* require it to follow *Tri–Manufacturing,* 82 B.R. 58. The doctrine of *stare decisis* does not bind one bankruptcy court to follow the decision of another bankruptcy court, even if that decision is from another judge within the same district. Although we are not required to follow *Tri–Manufacturing,* the Court fully embraces the sound reasoning of Chief Judge Perlman in that case. The *Tri–Manufacturing* court, answering the same question as that currently at issue, began its analysis by defining the term excise tax: "The obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is subject to the excise, and the element of absolute and unavoidable demand is lacking." *Id.* at 60 (quoting 71 Am.Jur.2d *State and Local Taxation* § 28 (1973)). The court concluded that the doctrine set forth in *Pan American*—that workers' compensation premiums were entitled to priority status under the Act—has continued validity under the Bankruptcy Code. *Tri–Manufacturing,* 82 B.R. at 60. The Court is persuaded by, and in agreement with, our sister court's analysis and decision.

### III. *Conclusion*

Based upon the foregoing, the Court finds that the Claim, in the amount of $533,563.62, is for an excise tax. The Claim, therefore, is entitled to priority status under 11 U.S.C. § 507(a)(7)(E). Accordingly, the Trustee's objection to the Claim is DENIED.

IT IS SO ORDERED.