675 F.2d 1062
 In re LORBER INDUSTRIES OF CALIFORNIA, INC., a California
corporation, Debtor.
COUNTY SANITATION DISTRICT NO. 2 OF LOS ANGELES COUNTY,
Claimant-Appellee,
v.
LORBER INDUSTRIES OF CALIFORNIA, INC., Debtor-Appellant.
 No. 79-3610.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 7, 1981.
Decided April 28, 1982.
 
 Irving Sulmeyer, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for debtor-appellant; Bennett L. Silverman, Los Angeles, Cal., on brief.
 Daniel V. Hyde, Knapp, Stevens, Grossman & Marsh, Los Angeles, Cal., for claimant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, HUG and FARRIS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This action was filed under Chapter XI of the Bankruptcy Act[1] by Lorber Industries, Inc. In the arrangement proceedings before the bankruptcy court, the local sewer district filed a claim for sewer use fees it had assessed to the debtor. It was claimed the user fees constituted taxes and were therefore entitled to priority status. We hold that such fees do not constitute taxes, and that the bankruptcy court correctly classified the sewer district as a general unsecured creditor.
 
 
 2
 * FACTS
 
 A. The District
 
 3
 County Sanitation District No. 2 of Los Angeles County (the "District") was formed under the authority of California Health and Safety Code §§ 4700-4858 (West 1970 & Supp. 1981). Its primary functions are to construct, operate, and maintain trunk sewer lines and treatment facilities that collect, treat, and dispose of domestic and industrial wastewater. The District is empowered to condemn or purchase property, and it may finance acquisition and construction by issuing bonds. Section 4746. Current expenses of maintenance and operation may be financed by issuance of negotiable promissory notes. Section 4746.1. It is also granted the power to levy and collect real property taxes to meet bond obligations, pay promissory notes, and defray operating expenses. Section 4747. The District is empowered to adopt specified ordinances and to enforce them through imposition of fines or imprisonment. Section 4766. These ordinances may provide for the collection of rentals, fees, and service charges. In addition to the misdemeanor penalties, charges assessed can be enforced through levy of a lien against the property for which the charge is imposed. Section 5473.5.
 
 
 4
 Prior to 1972 the District was financed through ad valorem property taxes. Each user of the system thus contributed to the District's expenses on the basis of the assessed valuation of the user's property. In addition, the District received federal grants available under section 201(g) of the Water Pollution Prevention and Control Act (the "Clean Water Act"), 33 U.S.C. § 1281(g).
 
 
 5
 In 1972 the Clean Water Act was amended to condition the award of grants upon conformance with specified revenue collection procedures. See 33 U.S.C. § 1284(b)(1), as amended by Clean Water Act Amendments of 1980, Pub.L.No.96-483, 94 Stat. 2360. The amendments required that grant applicants adopt an assessment scheme in which each nonresidential user of the system was required to pay charges proportionate to its use of the system. This requirement was imposed to reduce the inequity of requiring low volume dischargers to subsidize those industries which produce high volumes of wastewater. It was also assumed that a system of charges based on use would encourage more efficient management of waste and more conservative use of the system. S.Rep.No.95-370, 95th Cong., 1st Sess., reprinted in (1977) U.S.Code Cong. & Ad.News, 4326, 4352.
 
 
 6
 In response to these amendments, the District adopted Sections 409 and 410 of its Wastewater Ordinance, An Ordinance Regulating Sewer Construction, Sewer Use and Industrial Wastewater Discharges (April 1, 1972; as amended July 1, 1975) (the "Ordinance"). Under these sections nonresidential users of the system are assessed a surcharge. The charge is determined by an engineer's estimate, and takes into account the contribution to flow, chemical oxygen demand, and suspended solids. The user is given a credit against these charges in the amount of the user's ad valorem taxes; the balance is due to the District as a user fee.
 
 B. The Debtor
 
 7
 Lorber Industries of California, Inc. ("Lorber") is a producer of polyester fabric. Its plant is located in Carson, California, within the area served by the District. In the process of knitting, printing and dyeing the fabric it produces, Lorber discharges unusually high quantities of wastewater into the sewer system operated by the District. This waste contains high levels of chemicals and suspended solids. Based on the volume discharged and on the chemical and solid content of the wastewater, charges were assessed against Lorber by the District totaling $52,653.25. This assessment covered fiscal years 1974-75, 1975-76, and 1976-77.
 
 C. Proceedings Below
 
 8
 On October 19, 1976, Lorber filed a petition for relief from bankruptcy under Chapter XI of the Bankruptcy Act (the "Act"), 11 U.S.C. § 722. On June 7, 1977, the District filed a Proof of Priority Claim for the outstanding charges. The basis of the claim was that the fees due the District constituted taxes legally due and owing to the subdivision of a state, and that they were therefore entitled to priority under § 64(a)(4) of the Act, 11 U.S.C. § 104(a) (4).[2] Lorber filed objections to the claim of priority, contending that the charges constituted a general unsecured claim.
 
 
 9
 The bankruptcy judge issued a written opinion sustaining Lorber's objections to the priority claim. The opinion relied upon numerous state court cases holding that water rents, sewer charges, and related fees are not taxes. It contrasted involuntary assessments imposed to lessen the burden of general taxation with contractual obligations resulting from use of a public utility system. It held that this debt was of the second type, for Lorber was legally free not to use the system, and its voluntary use thus constituted an implied contractual debt. The bankruptcy judge allowed the District's claim as a general unsecured claim.
 
 
 10
 The District appealed to the district court. That court remanded the case to the bankruptcy court, with instructions to hold hearings and prepare detailed findings of fact identifying the alternate methods of wastewater treatment and disposal available to Lorber. After holding evidentiary hearings, the bankruptcy judge determined that four alternative disposal methods existed, but that Lorber was precluded from using all of these, based on practical and economic considerations. He concluded that "Lorber chose the only practical alternative available to it when it applied for and obtained permits from the District to discharge wastewater into the District's facilities."[3]
 
 
 11
 The district court reversed the decision of the bankruptcy court, and held that the surcharge was a tax. The decision reasoned that the charge was not contractual because the Ordinance enables the District to assess anyone who uses the District's services, whether or not the user acquires necessary permits. It determined that Lorber's use of the system was involuntary, because no practical alternatives were available. The district court also recognized that, as a public agency, the District was dependent upon its ability to collect funds such as these to continue provision of essential services. Lorber appeals the district court judgment.
 
 II
 DISCUSSION
 
 12
 This court has jurisdiction to review arrangement proceedings under section 316 of the Act, 11 U.S.C. § 716. The facts in this case are not in dispute. As with other types of bankruptcy proceedings, we are free to examine the legal conclusions of the lower courts. 11 U.S.C. § 47; In re Amex-Protein Development Corporation, 504 F.2d 1056, 1058 (9th Cir. 1974).
 
 
 13
 The broad purpose of the Act is to bring about an equitable distribution of the debtor's estate. Kothe v. R. C. Taylor Trust, 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930). The priority provisions of section 64(a) run counter to that purpose, creating a special status for specified claims. If one claimant is to be granted a priority under section 64(a), that status must be justified by clear statutory authorization. United States v. Embassy Restaurant, Inc., 359 U.S. 29, 31, 79 S.Ct. 554, 555, 3 L.Ed.2d 601 (1959); Nathanson v. NLRB, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). In order to be classified as taxes entitled to priority under the Act, the charges in question must therefore satisfy two requirements. First, they must be "taxes," as defined by federal law. New York v. Feiring, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); New Jersey v. Anderson, 203 U.S. 483, 491, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906). Second, their classification as priority claims must be consistent with the terms and purposes of section 64(a) and the other provisions of the Act. New York v. Feiring, 313 U.S. at 285, 61 S.Ct. at 1029.
 
 A. Characteristics of User Fees Imposed
 
 14
 In general, these charges can be classified as a tax only if they constitute "a pecuniary burden laid upon individuals or property for the purpose of supporting the Government" or to support "some special purpose authorized by it." New Jersey v. Anderson, 203 U.S. at 492. Taxes are not equivalent to debts, which are voluntary obligations based on express or implied contracts. Taxes are levied without the consent or voluntary action of the taxpayer. Id. See also National Cable Television Association v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974).
 
 
 15
 This court considered the distinction between taxes and non-tax charges in Dungan v. Department of Agriculture, State of California, 332 F.2d 793 (9th Cir. 1964), aff'g In re Farmers Frozen Food Company, 221 F.Supp. 385 (N.D.Cal.1963). We approved the analysis developed by the district court in that case:
 
 
 16
 (T)he elements which characterize an exaction of a "tax" within the meaning of said Section 64, sub. a(4) are as follows:
 
 
 17
 (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
 
 
 18
 (b) Imposed by, or under authority of the legislature;
 
 
 19
 (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
 
 
 20
 (d) Under the police or taxing power of the state.
 
 
 21
 221 F.Supp. at 387 (footnotes omitted). That court defined an "involuntary pecuniary burden" as a non-contractual obligation imposed by state statute upon taxpayers who had not consented to its imposition. Id.
 
 
 22
 In the instant case, both the bankruptcy court and the district court applied the analysis used in In re Farmers. Although they concurred as to the incidents of the charges, these courts placed different interpretations upon the "involuntary pecuniary burden" requirement, so that the application of the test to the charges' characteristics yielded opposite results. We agree with the conclusion of the bankruptcy judge that "involuntary burden" must be read in a manner consistent with the requirements imposed in New Jersey v. Anderson. In determining if Lorber's use of the system was voluntary, and if it therefore consented to imposition of the fees, we are not free to consider the practical and economic factors which constrained Lorber to make the choices it did. The focus is not upon Lorber's motivation, but on the inherent characteristics of the charges.
 
 
 23
 The difficulty of classifying these charges is a product of the duality of the District's revenue system. Both residential and industrial users are assessed ad valorem taxes, based on the value of real property within the District. The parties agree that the revenue collected on an ad valorem basis constitutes taxation. The surcharge for excess industrial use is assessed under the same state statutory authority as the ad valorem taxes. Those statutes allow the District to finance its operation in either manner. It is also empowered to collect and enforce charges in the same manner as general taxes. The calculation of the surcharge takes into account the amount paid in ad valorem taxes, so that the service charge obligation is functionally related to the tax obligation.
 
 
 24
 These similarities between the charges and taxes assessed by the District, and the contrasting conclusions reached by the two lower courts in their well-reasoned opinions, clearly indicate that the classification of these charges is a close question. On balance, however, we conclude that because of the characteristics of the charges, they are better classified as non-tax fees than as taxes.
 
 
 25
 The Ordinance allows the District to assess surcharges only when District services are used by industrial customers and only in an amount proportionate to their use. The imposition of these charges thus was triggered by Lorber's decision to discharge into the system large amounts of industrial wastewater. Because the assessment resulted from Lorber's acts, it falls within the non-tax fee classification defined by the Supreme Court in National Cable Television Association v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974):
 
 
 26
 Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard the benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.
 
 
 27
 These charges are fees for services provided to the industrial users of the system. The specific services, processing and disposal of excess wastewater, are provided to industrial users, rather than to the general local population. Amounts specifically charged for those services are by nature a debt obligation, based on a contractual agreement, the application for and issuance of a permit. The source of the obligation is not the authorizing legislation, but Lorber's decisions to acquire a permit and to engage in a high level of system use. We therefore hold that the incidents of these charges do not allow their classification as taxes under federal law.[4]
 
 
 28
 B. Relation of Fees to Terms and Purposes of the Act
 
 
 29
 The conclusion that these charges are not entitled to priority is entirely consistent with the terms and purposes of the Act. We find no clear indication in section 64(a) that user fees such as these are to be granted priority status.
 
 
 30
 Recognition of tax debts as priority claims was first provided in the 1867 version of the Act. The statute then granted second priority to "all taxes and assessments under the laws" of the United States. Bankruptcy Act of 1867, § 28. The 1898 Act included as taxes entitled to priority "all taxes legally due and owing by the bankrupt to the United States, State, county, district or municipality...." Bankruptcy Act of 1898, § 64. That expansion of the priority category, however, was followed by an increase in the types and levels of taxation imposed by the federal, state and local governments. As accelerating taxation absorbed greater percentages of the bankrupt's estate, Congress recognized that broad priority classifications hampered the goal of equitable distribution of the estate and penalized general creditors. S.Rep.No.1158, 89th Cong., 2d Sess., reprinted in (1966) U.S.Code Cong. & Ad.News 2468, 2469. As a result, the trend of amendments to section 64(a) has been to erode the preferred status of taxes.[5] See Plumb, The Tax Recommendations of the Commission on the Bankruptcy Laws-Priority & Dischargability of Tax Claims, 59 Cornell L.Rev. 991 (1974); Marsh, Triumph or Tragedy? The Bankruptcy Act Amendments of 1966, 42 Wash.L.Rev. 681 (1967). In view of this trend, it would be inappropriate for this court to expand priority status without a clear congressional mandate.
 
 
 31
 Our conclusion is further supported by the difference in protections accorded federal government and state government claims under the Act. Debts due to the United States are granted unique priority status under 11 U.S.C. § 104(a)(5) and 31 U.S.C. § 191. Thus a fee imposed by the federal government which could not be classified as a tax would still be eligible for priority status. However, the Act provides no priority protection for non-tax debts due to states and their subdivisions.[6] The District's demand for protection of its non-tax debt is thus contrary to the structure of section 64.
 
 
 32
 We agree with the concern expressed by the district court that bankruptcy proceedings should not be allowed to impede local government agencies in the collection of essential funds. However, the District had a remedy under the Act that would have fully protected its interests. The state statutes under which the District operates provide that unpaid user fees constitute a lien against the user's real property. Cal.Health & Safety Code §§ 5473.5 and 5473.11. Had the District perfected such a lien, it would have been entitled to claim the protections of section 60 of the Act, 11 U.S.C. § 96, as a secured creditor.
 
 
 33
 We hold that the user fees assessed to Lorber by the District are not taxes and do not constitute claims entitled to priority under § 64(a) of the Act. The judgment of the district court is REVERSED.
 
 
 
 [1]
 These bankruptcy proceedings took place under former Chapter XI of the Bankruptcy Act of July 1, 1898, c. 541, §§ 301-99, 30 Stat. 544 (formerly codified at 11 U.S.C. §§ 701-99), repealed, Act of Nov. 6, 1978, Pub.L.No.95-598, § 401(a), 92 Stat. 2549. Section 403(a) of the latter Act provides: "A case commenced under the (former) Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act (Pub.L.95-5981) had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted."
 All citations to the Act in this opinion refer to the former Act.
 
 
 [2]
 11 U.S.C. § 104(a) provides in part:
 (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be ... (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: Provided, however, That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority: And provided further, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court....
 
 
 [3]
 The bankruptcy court identified four alternatives:
 (a) Percolation to the soil via a system of perforated subsurface concrete pipe.
 (b) Evaporation of the waste using large ponds for evaporation purposes.
 (c) Construction of a biological secondary treatment facility with tertiary treatment with ethylene filtration and absorption by activated carbon.
 (d) Using tank trucks to haul the wastewater to sanitary landfills.
 The bankruptcy judge found that all four alternatives were prohibitively expensive. The first two were also found to be infeasible from an engineering and practical standpoint. The third alternative would require state and federal permits; the judge found it "unlikely" that Lorber could acquire these. The fourth alternative was not a reasonable option because the number of landfills is limited, and those that exist are not capable of absorbing the volume and quality of wastewater Lorber produces.
 
 
 [4]
 The District argues that it has statutory authority to impose charges on users of the system who fail to acquire a permit prior to use, so that the source of the charge is statutory rather than contractual. That situation is not presented by this case, for Lorber did obtain a permit. However, it would appear that imposition of charges on non-permit users would not transform the charges into taxes. The non-permit user who discharges into the system also incurs a debt obligation, based on an implied contract. The source of the obligation is not the statute authorizing imposition of charges, but the non-permit user's voluntary act of using the system
 
 
 [5]
 The revised Bankruptcy Act of 1978 is consistent with this trend. Section 507, 92 Stat. 2583, grants priority status to certain enumerated tax claims. The structure of this statute suggests a clear intent to limit taxes entitled to priority. The legislative history states that "(t)he kinds of taxes entitled to priority under (the revised Act) closely follows the categories granted priority under the Bankruptcy Act...." H.R.Rep.No. 595, 95th Cong., 2d Sess., reprinted in (1978) U.S.Code Cong. & Ad.News, 5787, 6151
 
 
 [6]
 Priority coverage of non-tax debts owed to state governments was provided by an amendment to the Act in 1926. That coverage was repealed in 1938. See 3A Collier on Bankruptcy, P 64.501 (14th ed.)