**In re CHATEAUGAY CORPORATION, Reomar, Inc. The LTV Corporation, et al., Debtors.**

**Bankruptcy No. 86 B 11270–86 B 11334, 86 B 11402 and 86 B 11464.**

United States Bankruptcy Court, S.D. New York.

April 13, 1993.

T.P. Ogden and M.C. Kunstler, Davis Polk & Wardwell, New York City, and Kaye, Scholer, Fierman, Hays & Handler, for Chateaugay Corp., Reomar, Inc., and The LTV Corp., et al. (collectively, debtors).

C.B. Martin, State of Mich., Dept. of Atty. Gen., Lansing, MI, for the State of Mich., Dept. of Labor, Funds Admin. (Michigan).

M.I. Sonkin, Cadwalader, Wickersham & Taft, New York City, for the State of Minn., Sp. Compensation Fund (Minnesota).

P.E. Baker, Dept. of Labor and Industry, Harrisburg, PA, for the State of Pa. Bureau of Workers' Compensation (Pennsylvania).

## MEMORANDUM OF DECISION ON STATES' WORKERS' COMPENSATION CLAIMS

FRANCIS G. CONRAD, Bankruptcy Judge.*

The issues presented [1] are (1) whether the claims of Michigan and Minnesota, for the reimbursement of payments they made to workers' compensation claimants, in their respective states, are entitled to administrative status; (2) whether the claims of Michigan and Pennsylvania for assessments incurred by a self-insured employer are entitled to tax priority under 11 U.S.C. § 507(a)(7)(E); and (3) whether Minnesota's claim for reimbursement owed it by an employer for workers' compensation payments it made is entitled to priority under either 11 U.S.C. § 507(a)(7)(E) or § 507(a)(7)(G).

We hold that the states' claims are not entitled to administrative priority, but rather fall under the standard rule that workers' compensation claims arising out of prepetition injuries are general unsecured claims.

---

* Sitting by Special Designation.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by F.R.Bkrtcy.P. 7052.

We also hold that the direct assessments imposed against the employers in Michigan and Pennsylvania are excise taxes and are entitled to 11 U.S.C. § 507(a)(7)(E) priority.

Finally, we hold that Minnesota's claim for reimbursement of moneys paid to workers' compensation claimants is similar to a tort subrogation claim. It is not an excise tax and is not entitled to 11 U.S.C. § 507(a)(7)(E) priority. Nor is it entitled to § 507(a)(7)(G) priority. The opinion which follows expands on our bench ruling.

## FACTS

Debtors filed petitions for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* on July 17, 1986.

LTV Steel Company, Inc. (LTV Steel) is a wholly-owned subsidiary of The LTV Corporation (LTV). Most of LTV's active employees work at its primary steel-making facilities located in Ohio, Indiana, and Illinois. LTV Steel expects the facilities in these states to be the core of its restructured corporation.

Adverse market conditions forced LTV Steel to scale down its business. It ceased business in some states, including Michigan.

Workers' compensation coverage must be provided by an employer in every state. This coverage is usually provided by one or more of the following methods: purchase of commercial insurance; payment into a state-sponsored fund; or by qualifying as a self-insurer.

States allow employers to become self-insurers if they demonstrate that they have the financial ability to make workers' compensation payments and can administer the claims. The employers must also provide security in case of default. The employer usually provides security by either posting a security bond or depositing cash in a trust fund. Backup security is provided through state-sponsored funds, which employers support through assessments.

LTV Steel found that in states where it had substantial operations, it was beneficial to self-insure rather than purchase commercial insurance.

On the Filing Date, LTV Steel ceased payment of self-insured claims in all states. The Bankruptcy Court issued an order on that same date, authorizing and empowering Debtors to pay certain pre-petition wages and salaries, reimbursement expenses, and employee benefits (the "July 17 Order").

The last paragraph of the July 17 Order states:

> ORDERED, that the Debtors be, and they hereby are authorized and empowered to pay all employees' workers' compensation, "black lung" and related benefits and claims which arose or accrued prior to the Filing Date.

Later, LTV Steel reinstated payment of workers' compensation benefits in Illinois, Indiana, and Ohio. LTV Steel calculated that maintenance of self-insured status in these states would result in a ten-year cash savings of $136 million when compared to the costs of commercial or state-sponsored insurance programs.

LTV Steel did not reinstate the self-insured payments in other states because it determined that abandoning these payments would have a beneficial effect on LTV Steel, resulting in $108 million in savings over ten years.

LTV Steel noted that the impact of this default on individual workers' compensation claimants was minimized because most of these payment obligations were picked up by surety companies or state-sponsored funds. The Michigan Self–Insurers' Security Fund has been required to pay the workers' compensation benefits of its residents. In Minnesota, when LTV Steel's surety bond coverage was depleted, the Minnesota fund commenced payment of LTV Steel's employees' pre-petition workers' compensation claims. In Pennsylvania, when the security bond coverage was depleted, LTV Steel resumed paying workers' compensation benefits.

Debtors' plan of reorganization includes the resumption of payment in full of post-confirmation workers' compensation payments to employees or former employees,

but not to any person who claims derivatively through them. Thus, the workers' compensation claims of state agencies are excluded.

Michigan moved for an order clarifying the last paragraph of the July 17 Order and interpreting it as a mandatory obligation that Debtors pay pre-petition benefits in all states. Judge Lifland instead ruled that the paragraph authorizing payment of workers' compensation claims that arose pre-petition was permissive and did not require LTV Steel to pay all pre-petition workers' compensation claims.

Judge Lifland concluded "that LTV Steel's state-by-state treatment of workers' compensation claims is based upon sound business judgment, constitutes a reasonable exercise of the discretion conferred upon it by the Order and is consistent with [LTV Steel's] fiduciary duty to preserve and maximize the value of its estate for the benefit of all creditors." Findings of Fact and Conclusions of Law and Order Denying Motion of State of Michigan, dated November 18, 1986 (November 18 Clarification) at 11. Michigan appealed the November 18 Clarification and contended that the prepetition payments of some pre-petition claims, but not all, constituted a distribution that violates the priority rules of 11 U.S.C. § 507 and the classification rules of 11 U.S.C. § 1122. *In re Chateaugay Corp.*, 80 B.R. 279, 280 (S.D.N.Y.1987) (Lasker, J). Judge Lasker found the November 18 Clarification to be interlocutory and not appealable. The court also noted that § 1122 did not apply to the pre-plan stages of a bankruptcy proceeding because it would limit the flexibility of the court and debtor and be inconsistent with the purposes of the bankruptcy laws. *Id.* at 288.

Michigan, Minnesota and Pennsylvania filed proofs of claim seeking administrative or tax priority for administrative assessments incurred by LTV Steel as a self-insured employer; and for reimbursement owed by Debtors to the states for workers' compensation payments made by the states during the course of the bankruptcy proceeding to LTV Steel workers relating to pre-petition injuries.

## DISCUSSION

■ The states agree that workers' compensation claims arising out of pre-petition injuries are ordinarily entitled to general unsecured status. *In re REA Express Inc.*, 442 F.Supp. 71 (S.D.N.Y.1977). Michigan and Minnesota insist that the case before us presents circumstances which require that we elevate to administrative status those states' claims based on payments made by the states to workers' compensation beneficiaries in their respective states.

Michigan and Minnesota first argue that under 28 U.S.C. § 959(b),[2] a debtor is required to comply with state law. Recognizing the fact that the filing of a bankruptcy petition stays any requirement that a debtor pay pre-petition debts, Minnesota urges that the July 17 Order entered by Judge Lifland, which authorized payments of pre-petition benefits, somehow lifted the stay with respect to Minnesota's state law that requires payment of workers' compensation benefits. Thus, Minnesota argues that 28 U.S.C. § 959(b) was implicated, obligating LTV Steel to continue to pay these benefits.

■ Michigan and Minnesota assert that compliance with state law during the pendency of the bankruptcy is an administrative expense. Thus, they maintain that the obligation imposed on LTV Steel to pay workers' compensation benefits, once 28 U.S.C. § 959(b) was implicated, should be treated as an administrative expense.

This argument fails to recognize the fact that in his November 18 Clarification, Judge Lifland specifically found that the

---

**2.** 28 U.S.C. § 959(b) provides:

Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do is in possession thereof.

paragraph authorizing Debtors to pay pre-petition benefits was permissive and not mandatory. The court conferred upon LTV Steel the right to exercise discretion in determining which pre-petition benefit claims to pay. The stay on pre-petition claims was only lifted with respect to those obligations that Debtors, based on sound business judgment, chose to pay. Indeed, as previously noted, Judge Lifland found that LTV Steel's decision was a reasonable exercise of discretion based on sound business judgment and was beneficial to the estate. July 17 Order, supra, at 11. LTV Steel's default, with respect to its obligation under the workers' compensation laws of the states where LTV Steel chose not to pay pre-petition benefits, occurred pre-petition, not as part of the administration of the estate. Thus, these obligations are not entitled to administrative expense status.

■ Minnesota next urges that the initial decision to allow disparate treatment of workers' compensation claimants in the pre-plan stages of the bankruptcy proceeding must now be reassessed in view of the fact that the plan of reorganization is imminent.

Minnesota notes that 11 U.S.C. § 1122 relates to placing substantially similar claims in the same class and 11 U.S.C. § 1123(a)(4) provides that claims and interests in the same class must receive the same treatment.

Minnesota asserts that, absent the July 17 Order, its claim would have been in the same class as the claims of Ohio, Indiana, and Illinois. If the bankruptcy court had not entered that order, LTV Steel would not have paid the workers' compensation benefits in those states. The states would have been required to pay their respective residents' claims and would now be seeking reimbursement from LTV Steel. Thus, Minnesota argues that LTV Steel is required to pay Minnesota's claim as an administrative expense in order that Minnesota will be accorded the same benefit or treatment as Ohio, Indiana, and Illinois.

Debtors argue that there is no dissimilar treatment of the states' workers' compensation claims because no workers' compensation claims are accorded administrative priority in the plan.

The benefits paid by LTV Steel in Ohio, Indiana, and Illinois were made to injured employees. No payments were made to states. Any benefits to the states were indirect, resulting from payments made to the workers. The individual workers in Michigan, Minnesota, and Pennsylvania have continued to receive workers' compensation benefits based on pre-petition injuries. The payments have been made from surety bonds or state workers' compensation funds.[3] Thus, individual workers in all the states are receiving the same treatment and inasmuch as, under the plan, LTV Steel will resume payment to workers' compensation beneficiaries, they will continue to receive the same treatment. Under the Code, plan proponents are not required to ensure that all indirect beneficiaries of actions undertaken in the plan receive the same treatment. The plan proponent must only "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4).

Relying on § 1122 and the equality of treatment requirement of § 1123(a)(4), Michigan asserts a slightly different argument. Michigan maintains that its claim for reimbursement of workers' compensation benefits paid to residents of its state should receive the same treatment as claims of individual workers' compensation beneficiaries. Michigan asserts that, under its laws, when it paid the workers' compensation benefits to its residents, it became subordinated to their rights. Therefore, Michigan argues that it should be placed in the same class and receive the same treatment as the individual workers' compensation recipients of other states.

It may be appropriate in some circumstances to separate the states claims and

---

**3.** In Pennsylvania, when surety bond coverage was depleted, LTV Steel resumed paying work-ers compensation benefits.

the individual workers' compensation claims, if the interests of the states are distinct from and in a different posture than the interests of the individual workers. *In re U.S. Truck Co.*, 800 F.2d 581, 587 (6th Cir.1986). We decline to address this classification issue because whether such a separate classification is warranted in the case before us is more appropriately addressed at confirmation and is not necessary to our decision today.

■ Finally, with respect to its request for administrative status, Minnesota argues that its claims are the result of unsecured debt voluntarily incurred by LTV Steel post-petition. Minnesota asserts that this was voluntary debt because LTV Steel had the authority, based on the July 17 Order, to pay workers' compensation claims and chose not to pay them. Minnesota argues that under 11 U.S.C. § 364(b), this is an administrative expense.

In considering Minnesota's earlier argument concerning compliance with state law under 28 U.S.C. § 959(b), we noted that LTV Steel only had authority to pay the pre-petition debt if, in its sound business judgment, it was beneficial to the estate. LTV Steel determined that it was not in the best interest of the estate to pay the pre-petition workers' compensation claims in Minnesota. Thus, Judge Lifland did not grant LTV Steel authority to incur debt in Minnesota for failure to pay pre-petition workers' compensation claims. Nor would or should a bankruptcy court grant a debtor authority to incur post-petition debt by indirection. We reiterate that these obligations were incurred pre-petition, not as part of the administration of the estate.

Having determined that the claims of Minnesota and Michigan for reimbursement of payments made by them to workers' compensation beneficiaries are not entitled to administrative priority, we turn to the states' request that their various claims

be afforded tax priority under 11 U.S.C. § 507(a)(7)(E).[4]

Michigan and Pennsylvania seek tax priority for their claims based on the assessments incurred by LTV Steel as a self-insured employer. Minnesota seeks tax priority for the reimbursement owed it by Debtors for the workers' compensation payments it made.

Michigan has established various funds to pay workers' compensation benefits. To finance these funds, employers and insurance carriers are assessed annually based on the proportional amount of worker's compensation the employer or carrier paid in the previous year.

■ Whether a claim is a tax entitled to priority under the Code is a federal question. *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). To determine this we refer to the "terms and purposes" of the bankruptcy laws. *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund (In re New Neighborhoods, Inc.)*, 886 F.2d 714, 718 (4th Cir.1989), citing, *Feiring, supra*, 313 U.S. at 285, 61 S.Ct. at 1029. Priorities authorized by the Code are to insure payment to certain classes of claims by requiring that they be paid prior to other claims." *Neighborhoods, supra*, 886 F.2d at 718. The Supreme Court held that the priority afforded taxes under the Bankruptcy Act extended to "those pecuniary burdens laid upon individuals or their property regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Feiring, supra*, 313 U.S. at 285, 61 S.Ct. at 1029. *In re Lorber Industries of California, Inc.,* 675 F.2d 1062, 1066 (9th Cir.1982), lists the elements which characterize a tax:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

---

**4.** 11 U.S.C. § 507(a)(7)(E) provides that there is a priority for: an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or

under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, transaction occurring during the three years immediately preceding the date of the filing of the petition.

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

The court in *Neighborhoods, supra,* 886 F.2d at 719, noted that workers' compensation premiums would only qualify for priority status under the Code if they are an excise tax. An excise tax is defined as a tax that is "imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." Black's Law Dictionary 506 (5th ed. 1979). A payment to a state is entitled to a tax priority "if the state has compelled the payment and if the payment serves a public purpose." *Neighborhoods, supra,* 886 F.2d at 718. The *Neighborhoods* court found that the West Virginia assessment required under the Workers' Compensation Act, which assesses premiums against all employers who do not qualify as self-insurers, was an excise tax subject to § 507(a)(7)(E) priority. The court determined that the public purpose of the system is to "allocate the burden of the costs of injured employees and/or their dependents among employers rather than among the general public." *Neighborhoods, supra,* 886 F.2d at 719. The court recognized that these employees might otherwise require public support. *Id.* Thus, the general public is served because by supporting the fund, the premiums "defray [the state's] expenses in connection with the fund." *In re Suburban Motor Freight,* 134 B.R. 617, 623 (Bkrtcy. S.D.Ohio 1991). The *Neighborhoods* court also noted that the assessments were taxes even if the funds were raised for the express purpose of satisfying workers' compensation claims. *Neighborhoods, supra,* 886 F.2d at 719. "The pertinent questions about ... premiums are whether the government compelled the employer to pay the exaction and whether the payment was for a public purpose." *In re Pan American Paper Mills, Inc.,* 618 F.2d 159, 162 (1st Cir.1980).

Debtors cite to *Lorber, supra,* 675 F.2d at 1067, to argue that Michigan's assessment claim is more in the nature of a user or other governmental fee, rather than a tax. In *Lorber,* the court found that a sewer surcharge was a fee and not entitled to tax priority because the fee was "for services provided to the industrial users of the system ... rather than to the general local population." *Id.*

A tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer. *Suburban Motor, supra,* 134 B.R. at 624. The assessments, in issue, are not fees which confer a benefit on the employer separate from the benefit for the general public. Rather the assessments are for a public purpose, to create a fund to pay workers compensation claims, thus, benefitting the general public who does not have to then support the claimant employee. *Id.*

■ Debtors attempt to distinguish the cases that have allowed priority status for assessments against employers by asserting that in the states where the courts have granted the priority, the employers were not afforded the opportunity to obtain private commercial insurance and, thus, the exaction of the assessment in those states was mandatory. Debtors assert that in Michigan and Pennsylvania, the employers had the option of acquiring commercial insurance and, therefore, their contribution to the fund is voluntary and does not qualify as a tax.

While the employers in West Virginia were not able to obtain private commercial insurance, they were permitted to opt-out and self-insure. *Neighborhoods,* 886 F.2d at 716. As self-insurers, they would not be required to make premium payments to the fund. *Id.* Thus, it is not accurate to say that no options were available to employers under the West Virginia system. Indeed, the *Neighborhoods* court acknowledged the alternative available when it said "the purpose of the Congress in enacting 11 U.S.C. § 507(a)(7)(E) has been satisfied because West Virginia by statute has compelled employers to pay premiums into the Fund, *or to carry substitute insurance,* in the

public interest." *Neighborhoods, supra,* 886 F.2d at 720. (emphasis added). The fact that Ohio prohibited private commercial insurance coverage for workers' compensation claims led the *Suburban Motor, supra,* 134 B.R. at 622, court to find that the system was mandatory and the assessment against the debtor was an "involuntary pecuniary burden." *Id.* The court dismissed the employers' option to self-insure by saying the privilege to self-insure was limited. *Id.* Nevertheless, the option was available. Notwithstanding the limitation, some employers qualified to self-insure. The court determined that the assessment was involuntary and mandatory despite the option to self-insure. Thus, we find that the fact that other options are available is not dispositive.

Nor are we persuaded by Debtor's contention that whether the states label an exaction a tax has importance. The *Feiring* court specifically instructed us not to be persuaded by the label. *Feiring, supra,* 313 U.S. at 285, 61 S.Ct. at 1029. Rather, we may turn to state court decisions in interpreting its laws "to ascertain whether [the] incidents [of the obligations imposed by the law] are such as to constitute a tax." *Id.* Michigan's Supreme Court, in dismissing attacks on the constitutionality of its fund assessments, has found that assessments paid to the state funds were collected for valid public purposes. *McAvoy v. H.B. Sherman Co.,* 401 Mich. 419, 450, 258 N.W.2d 414 (1977); *Stottlemeyer v. General Motors Corp.,* 399 Mich. 605, 613–614, 250 N.W.2d 486 (1977). Thus, the findings of Michigan's state courts support the contention that its assessments for the funds have this characteristic of a tax.

*In re Payne,* 27 B.R. 809 (Bkrtcy.D.Kan. 1983), which concerned the Kansas Workers' Compensation Act, noted that "the prevailing rule is that a direct assessment against an employer is an excise tax in bankruptcy." *Id.* at 815.

We agree with the prevailing view and find that Michigan's claims for assessment is an excise tax entitled to 11 U.S.C. § 507(a)(7)(E) priority.

Pennsylvania seeks unpaid assessments owed to its Worker's Compensation Administration Fund. In Pennsylvania, employers may insure through the state fund, self-insure, or purchase coverage from a private insurance company.

Debtors cite *In re Metro Transportation Co.,* 117 B.R. 143 (Bkrtcy.E.D.Pa.1990) where the court determined that the Pennsylvania assessment of premiums was not a tax entitled to priority. The *Metro* court distinguished the *Neighborhoods* decision based on the fact that it found that the assessments of premiums in Pennsylvania is not mandatory because the employers can elect to self-insure or obtain commercial insurance. *Metro, supra,* 117 B.R. at 154. The *Metro* court also found that the Pennsylvania Act is "not a revenue raising statute for the benefit of the general public." *Id.*

For the reasons cited in our discussion of Michigan's claim, we are not in agreement with *Metro* court's analysis. The monies collected for these funds clearly benefit the public. The Subsequent Injury Fund claim relates to assessments applied to pay handicapped employees who are injured in the course of their employment. This fund is in the public interest because it encourages the employment of the handicapped. The Workers' Compensation Supersedeas Fund claim concerns assessments collected to reimburse self-insured employers and insurers who pay compensation benefits to employees where it is subsequently determined that the employee was not entitled to the compensation. This prevents the employer from initiating actions to recoup the money from the employee, thus providing further financial assistance to the compensation recipient. The public is benefitted by the collection of monies by these funds because it would otherwise finance these initiatives.

Pennsylvania's claim for assessments owed to the Workmen's Compensation Administration Fund (WCAF) is not based on premiums paid to the fund to satisfy claims of employees who are insured by the fund at the time of an injury. Rather, the WCAF claim relates to assessments applied

to finance the cost of the state's administration of the workers' compensation system, which otherwise would be funded from the general revenues of the state.

Debtors emphasize the fact that, in the cases where courts have allowed tax priority to assessments, the states involved impose an automatic lien on the employer's property when the employers fail to pay the assessment. While we agree that an automatic lien is one indicator of a tax, we do not believe the absence of this method of compelling compliance with the law is outcome determinative. In Pennsylvania, if an employer fails to make an assessment payment, the state may deny it the privilege to self-insure. Employers initially elect to self-insure because it is financially beneficial for them. Thus, the threat of eliminating the option deters noncompliance. With respect to the WCAF, the failure to pay an assessment subjects the self-insurer to revocation or suspension of its license to transact business in Pennsylvania. This is an even stronger deterrent than a lien on the employer's property. Thus, we are satisfied that the payment of the assessments in Pennsylvania is mandatory.

We hold that Pennsylvania's assessment claims are entitled to § 507(a)(7)(E) tax priority.

■ Minnesota seeks reimbursement of amounts it has paid to employees of LTV Steel from its Special Compensation Fund. LTV Steel ceased all workers' compensation payments in Minnesota at the filing of its petition.

The sources of revenue for Minnesota's Special Compensation Fund are the state's general fund, direct assessments and penalties charged to employers, investment income, and recoveries from defaulting employers and their sureties.

Currently, direct assessments are equal to 31% of the total workers' compensation

claims paid by the Special Compensation Fund for that employer.[5]

In support of its position that its reimbursement claim for workmens' benefits it paid should receive § 507(a)(7)(E) priority, Minnesota cites *In re Beaman,* 9 B.R. 539, 540 (Bkrtcy.D.Or.1980). In *Beaman,* the claims for reimbursement of workers' compensation benefits made to the debtor's employees by Oregon's workers' compensation fund received § 507(a)(7)(E) tax priority, because the court determined the reimbursement obligation was mandatory and served a governmental interest. *Id.* at 541. Minnesota also cites *In re Hutchinson,* 135 B.R. 890, 891 (Bkrtcy.D.Ariz.1992), where an Arizona bankruptcy court reached the same conclusion with respect to Arizona's reimbursement claim for workers' compensation benefits paid to a debtor's employees.

Debtors cite *In re Payne, supra,* 27 B.R. at 817, where the court determined that Kansas' right to reimbursement of amounts paid to a debtor's employees under their workers' compensation act is not a § 507(a)(7)(E) priority.

Employers in Kansas are required to secure compensation payments by acquiring commercial insurance or qualifying as a self-insurer. A state fund is established to ensure payment to workers' compensation beneficiaries who are not compensated by the employer. The fund is financed by assessments against all insurance carriers and qualified self insurers. The fund also receives money when an employer who fails to pay an employee reimburses the fund. The *Payne* court denied priority status to those claims that sought reimbursement from the debtors for amounts paid by the fund to workers' compensation beneficiaries. The court found it was not a tax. The court noted that "by satisfying the claim of the employee, the insurance commissioner 'steps into the shoes' of the em-

5. In addition, an employer who pays the direct assessment is entitled to receive certain reimbursements from the Special Compensation Fund.

Minnesota is not seeking payment of the direct assessments owed by LTV Steel to the Spe-

cial Compensation Fund because the parties have agreed to treat the assessments due as equal to any reimbursement due from the Special Compensation Fund to LTV Steel and, thus, to set off the assessment against the reimbursement.

ployee, and is subrogated to the rights of the employee." *Id.*

Although the obligation to reimburse Minnesota's state fund is mandatory and serves a public purpose, we agree with the court's analysis in *Payne, supra,* 27 B.R. at 817, that the obligations for reimbursement of workers' benefits paid by Minnesota has "more substantial non-tax characteristics and [is] more likened to an assignment of or subrogation to a Tort claim than a tax." *Id.*

■ Thus, we find that Minnesota's claim for reimbursement of the benefits it paid to LTV Steel's employees is not entitled to § 507(a)(7)(E) tax priority.

Finally, citing *In re Carlton Enterprises, Inc.,* 103 B.R. 876 (Bkrtcy.N.D.Ohio 1989), Minnesota argues that its state fund reimbursement claim should be afforded priority status because it comes within § 507(a)(7)(G).[6] Minnesota contends that its reimbursement claim is related to tax assessments, is a penalty because imposed on employers who fail to fulfill their state obligation to pay assessments, and compensates the state for actual pecuniary loss.

We find that this claim for reimbursement is not a priority claim within § 507(a)(7)(G). Minnesota has not argued that the workers' compensation benefit payments are a tax "of a kind specified" in paragraph 7 of § 507. The obligation to reimburse Minnesota for workers' compensation benefits it paid arises out of LTV Steel's own failure to pay these benefits to the workers, not because of LTV Steel's failure to pay the tax assessment to Minnesota. If LTV Steel had in fact paid the assessment to the Fund but had defaulted in paying benefits directly to the workers, LTV Steel would nevertheless be liable to reimburse Minnesota for the payments to

workers. The obligation to reimburse is not related to the failure to pay the assessments but rather to the failure to pay the benefits.

Thus, the obligation to reimburse Minnesota is not "a penalty related to a claim of a kind specified in this paragraph [7] and in compensation for actual pecuniary loss." The reimbursement claim is not entitled to § 507(a)(7)(G) priority as a penalty related to a claim of a kind specified in paragraph 7 of § 507.

## CONCLUSION

The claims of Michigan and Minnesota for reimbursement of payments made to their respective residents relating to workers' compensation claims are not entitled to administrative status. LTV Steel's default with respect to its obligation to provide workers' compensation payments occurred pre-petition, not as part of the administration of the estate. The states' claims are not entitled to administrative priority.

The claims of Michigan and Pennsylvania for assessments incurred by LTV Steel as a self-insured employer is entitled to 11 U.S.C. § 507(a)(7)(E) tax priority.

Minnesota's claim for reimbursement of the workers' compensation payments it made is similar to a tort subrogation claim and is not entitled to 11 U.S.C. § 507(a)(7)(E) tax priority.

The claim filed by Minnesota for reimbursement of the workers' compensation payments is not a priority claim within § 507(a)(7)(G).

Counsel for Debtor to settle the order.

---

**6.** Section 507(a)(7)(G) reads, in relevant part:
(a) The following expenses and claims have priority in the following order:

  .    .    .    .    .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for

  .    .    .    .    .

(G) a penalty related to a claim of a kind specified in this paragraph and in compensa-

tion for actual pecuniary loss.